**Thomas J. CAPANO, Defendant Below, Appellant,**

v.

**STATE of Delaware, Appellee.**

**No. 131, 2005.**

Supreme Court of Delaware.

Submitted: Oct. 19, 2005.

Decided: Jan. 10, 2006.

2. *See* Del.Supr. Ct. R. 6(a)(i).

3. *See Emerald Partners v. Berlin,* 811 A.2d 788 (Del.2001).

4. *Id.*

5. *Id.* at 791.

6. 860 A.2d 321 (Del.2004).

7. *Id.* at 323.

Joseph M. Bernstein, Wilmington, DE, for appellant.

Ferris W. Wharton (argued) and Loren Meyers of the Department of Justice, Wilmington, De, for appellee.

Before STEELE, Chief Justice, HOLLAND, JACOBS, RIDGELY, Justices and NOBLE, Vice Chancellor,* constituting the Court en Banc.

RIDGELY, Justice, for the majority:

Defendant-appellant, Thomas J. Capano, was convicted by a jury of Murder in the First Degree, and was sentenced to death by a Superior Court Judge after the jury advised the Judge by a vote of 11 to 1 that a statutory aggravating circumstance existed which made Capano eligible for the death penalty. This Court affirmed the conviction and death sentence on appeal, specifically rejecting Capano's challenge to the death sentence because the sentencing judge, and not the jury, determined his eligibility for a sentence of death.[1] This Court was guided by the United States Supreme Court's decision in *Walton v. Arizona.*[2] Capano then petitioned for certiorari review by the United States Supreme Court. While his petition was pending the United States Supreme Court decided *Ring v. Arizona*[3] which overruled *Walton* "to the extent that it allow[ed] a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty."[4] In *Ring*, the United States Supreme Court held that a statutory aggravating circumstance operated as "the functional equivalent of an element of a greater offense" and that the Sixth Amendment required that this element be "found by a jury."[5]

Capano's petition for certiorari review was denied by the United States Supreme Court.[6] Capano then moved for postconviction relief in the Superior Court and argued that his death sentence must be vacated because of the *Ring* decision and other decisions interpreting *Ring*. He also claimed his conviction should be set aside based on multiple claims that his counsel was ineffective. After an evidentiary hearing, the Superior Court rejected all of Capano's arguments and denied postconviction relief.[7] Capano's death sentence

---

\* Sitting by designation pursuant to Article IV, Section 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a).

1. *Capano v. State*, 781 A.2d 556, 668–673 (Del.2001).

2. 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

3. 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

4. *Id.* at 609, 122 S.Ct. 2428.

5. *Id.* (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).

6. *Capano v. Delaware*, 536 U.S. 958, 122 S.Ct. 2660, 153 L.Ed.2d 835 (2002).

7. *State v. Capano*, 2005 Del.Super. Lexis 69 (March 9, 2005).

was reimposed and then stayed pending the outcome of this appeal.[8]

In this appeal, Capano has limited his claims of ineffective assistance of counsel to three of those that he raised before the Superior Court.[9] Capano also claims that the death penalty statute under which he was sentenced ("the 1991 statute") is facially unconstitutional under *Ring*, or unconstitutional as applied to him, and that principles of Double Jeopardy bar a new penalty hearing.

 We affirm the judgment of the Superior Court, holding that Capano has failed to establish his ineffective assistance of counsel claims. We reject Capano's claim that the 1991 statute is unconstitutional, but find a constitutional flaw in its application to him under the new rule announced by the United States Supreme Court in *Ring*. A factual determination of eligibility for the death penalty must be found by a jury because under *Ring*, eligibility based upon the existence of a statutory aggravating circumstance is no longer merely a sentencing factor but, rather, is an element of the greater offense of capital murder. In Delaware, the elements of any criminal offense, including the greater of-

fense of capital murder, must be found by a unanimous jury. Because Capano's eligibility for the death penalty was decided by the sentencing judge without a unanimous jury finding of a statutory aggravating circumstance, we must vacate his death sentence. This constitutional flaw in the penalty phase does not bar a new penalty hearing under a procedure that comports with constitutional requirements. Accordingly, we remand this matter for a new penalty hearing consistent with *Ring* and the death penalty statute that was enacted in response to the *Ring* decision ("the 2002 statute").[10]

## I. Background

In a previous Opinion,[11] this Court discussed the events leading to the conviction and capital sentence. We repeat our earlier introduction:

> Thomas J. Capano was found guilty of first degree murder and sentenced to death for the murder of Anne Marie Fahey. As with all capital cases in Delaware, the proceedings here were divided into a guilt phase, a penalty hearing and a sentencing determination by the trial judge, who gave substantial weight to the jury's recommendation following the penalty hearing.[12] Capano was ar-

---

8. It is undisputed that Capano's death sentence under the 1991 statute is unique. As the Superior Court acknowledged, "all other defendants sentenced to death under the 1991 statute involved a unanimous jury determination as to the statutory aggravating circumstance(s) and/or the jury's unanimous verdict in the guilt phase which, de facto, established a statutory aggravator, such as a guilty verdict involving the death of two people." *State v. Capano*, 2005 Del.Super. Lexis 69, *90 (March 9, 2005). *See Steckel v. State*, 882 A.2d 168 (Del.2005) (convicted of murder, rape and arson); *Starling v. State*, 882 A.2d 747 (Del.2005) (double murder); *Cabrera v. State*, 840 A.2d 1256 (Del.2004) (double murder); *Zebroski v. State*, 822 A.2d 1038 (Del. 2003) (felony murder); *Swan v. State*, 820 A.2d 342 (Del.2003) (felony murder); *Reyes v. State*, 819 A.2d 305 (Del.2003) (double murder); *Norcross v. State*, 816 A.2d 757 (Del.

2003) (felony murder); *Taylor v. State*, 822 A.2d 1052 (Del.2003) (the defendant's stipulation at the guilt phase that the victim was pregnant at the time of the murder made the defendant death eligible).

9. As a result, the remaining claims of ineffective assistance of counsel have been waived. *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993).

10. 11 Del. C. § 4209; 73 Del. Laws c. 423, S.B. 449 (2002).

11. *Capano v. State*, 781 A.2d 556, 582–86 (Del.2001).

12. The procedure changed after the General Assembly revised the death penalty statute in 2002.

rested for Fahey's murder in November 1997 and indicted in December 1997. His trial began in Superior Court in October 1998. The guilt phase of this proceeding before the jury was quite long, spanning approximately thirty-two trial days spread over ten weeks from October 6, 1998 to January 17, 1999. After the jury unanimously found Capano guilty of first degree murder, the penalty hearing commenced. It lasted for five days and resulted in findings by the jury on aggravating and mitigating circumstances. In the penalty phase the jury found a statutory aggravating circumstance by a vote of 11 to 1 and recommended by a vote of 10 to 2 that the trial judge find the aggravating circumstances outweighed the mitigating circumstances. After giving proper weight to those findings, the Superior Court Judge sentenced Capano to death on March 16, 1999.[13]

On direct appeal, this Court affirmed. Capano petitioned to the United States Supreme Court for certiorari review. One week before that Court denied Capano's petition for certiorari, it decided *Ring v. Arizona*, the case that forms the basis for Capano's subsequent Rule 61 motion and this appeal.

The decision of the United States Supreme Court in *Ring v. Arizona* announced a new procedural rule and applies to Capano's case because at the time *Ring* was decided, Capano's conviction was not final.[14] Capano's petition for certiorari was pending when *Ring* was decided. After *Ring* was decided, Capano's petition was denied by the United States Supreme Court without comment.[15]

## II. Discussion
### A.
### Capano's Ineffective Assistance of Counsel Claims Lack Merit

We first discuss Capano's ineffective counsel claims. Specifically, Capano contends that his trial counsel was prejudicially deficient because counsel: (1) did not request limiting instructions concerning Anne Marie Fahey's out-of-court statements; (2) agreed to a stipulation that admitted Fahey's out-of-court statements; and (3) did not object to the prosecutor's cross-examination of Capano about his pre-arrest and post-arrest silence in possible violation of his Fifth Amendment rights. We hold the Superior Court, in denying Capano's motion for postconviction relief, did not abuse its discretion by rejecting these contentions.

■■■ "We review for an abuse of discretion a Superior Court judge's denial of a motion for postconviction relief based on ineffective assistance of counsel."[16] "Nevertheless, we carefully review the record to determine whether 'competent evidence supports the court's findings of fact and whether its conclusions of law are not erroneous.'"[17] Questions of law are reviewed de novo.[18]

■■■ To prevail on his claim of ineffective assistance of counsel, Capano must

13. *Capano v. State*, 781 A.2d 556, 582–86 (Del.2001).

14. *See Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 713 n. 6, 93 L.Ed.2d 649 (1987).

15. *Capano v. Delaware*, 536 U.S. 958, 122 S.Ct. 2660, 153 L.Ed.2d 835 (2002).

16. *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

17. *Id.* (quoting *Outten v. State*, 720 A.2d 547, 551 (Del.1998)).

18. *Id.*

satisfy the test set out by the United States Supreme Court in *Strickland v. Washington:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[19]

 Regarding the first prong, deficient performance, there is a strong presumption that counsel's representation was professionally reasonable:[20]

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[21]

As for the second prong, "actual prejudice" means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[22]

 Capano's first and second ineffective assistance of counsel contentions are that his trial counsel should not have stipulated to admit Anne Marie Fahey's out-of-court statements, and that counsel should have requested jury limiting instructions concerning them. During the trial, the prosecution introduced out-of-court statements from the victim, Anne Marie Fahey. As a matter of strategy, the defense lawyers stipulated with the prosecutors that they would not object to the prosecution's hearsay evidence, provided the prosecutors would not object to the defense's hearsay evidence. Capano contends that his counsel's strategy meets both prongs of *Strickland.* First, he contends it was professionally unreasonable for defense counsel to agree to admit all the prosecution's hearsay evidence; and second, he contends this admission into evidence caused actual prejudice because without it, the result of the trial would have been different.

We agree with the Superior Court that Capano has not satisfied his burden under either *Strickland* prong with respect to his counsel's stipulation to admit out-of-court statements. Capano's trial attorneys made a professionally reasonable decision in stipulating with the prosecution to exchange unfavorable hearsay for favorable

19. *Strickland v. Wash.,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Steckel v. State,* 795 A.2d 651, 652 (Del.2002) (quoting *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052); *Wilson v. State,* 834 A.2d 68, 72 (Del.2003) (citing *Dawson v. State,* 673 A.2d 1186, 1190 (Del.1996)); *Grosvenor v. State,* 849 A.2d 33, 35 (Del.2004) (citing *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

20. *Grosvenor v. State,* 849 A.2d 33, 35 (Del. 2004).

21. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

22. *Wilson v. State,* 834 A.2d 68, 72 (Del.2003) (quoting *Dawson,* 673 A.2d at 1190).

hearsay. They entered into this stipulation with the full understanding and agreement of Capano, who is an experienced attorney and a former prosecutor. Even assuming that counsel should not have entered into this stipulation, Capano has not shown prejudice, because even without the prosecution's hearsay evidence, there was sufficient evidence to sustain the jury's verdict.

▮ Capano also contends that both *Strickland* prongs were satisfied by his trial counsel's failure to request limiting instructions after the testimony of each witness who presented out-of-court statements of Fahey. The Superior Court gave limiting instructions after the testimony of several, but not all, of the witnesses.

We agree with the Superior Court that Capano has not satisfied his burden under either *Strickland* prong with respect to his counsel's failure to request limiting instructions after each witness. Capano's attorneys made a strategic choice not to request a limiting instruction after every witness, but instead to rely on the limiting instructions given by the Superior Court. Capano has failed to establish that this strategic decision was objectively unreasonable. Nor has Capano met his burden in showing that the lack of a limiting instruction after every witness was prejudicial.

▮ Capano's third and final ineffective assistance of counsel claim is that his trial counsel should have objected to the prosecutor's cross-examination of Capano concerning his pre-arrest and post-arrest silence because such questioning violated his Fifth Amendment rights. Before trial Capano never gave authorities the account of events that he gave at trial. At trial, he explained why on direct examination. During Capano's cross-examination, the prosecutor asked Capano about his silence before his arrest, during his bail hearing, and while in jail, and asked about his failure to give the same account before trial that he gave at trial. Generally, the Fifth Amendment does not allow a prosecutor to argue to the jury that it can infer guilt from a defendant's silence when exercised as a right not to testify or incriminate oneself.[23] Defense counsel did not raise an objection because he felt Capano had opened the door, and that it was "probably a tactical judgment."

This Court has previously held in Capano's direct appeal that the prosecutor's questions were proper impeachment.[24] We agree with the Superior Court that Capano did not satisfy his burden under either *Strickland* prong for his counsel's failure to object to the questions regarding his pre-trial silence. It is plain from the record that he opened the door to the very cross examination he challenges in this appeal. During his direct examination Capano testified that before his arrest and after June 27, 1996 he had not told anyone the truth. He said he did that to protect himself and to protect others he identified. He explained why he did not tell anyone the story he told the jury and that actually he wanted to speak with the police, but did not.[25]

**23.** *Griffin v. California,* 380 U.S. 609, 614–15, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Several federal circuit courts have held that prosecution comment on pre-arrest silence violates *Griffin. Coppola v. Powell,* 878 F.2d 1562, 1565–1568 (1st Cir.), *cert. denied,* 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 383 (1989); *United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1017 (7th Cir.1987); *United States v.* *Burson,* 952 F.2d 1196, 1200–1201 (10th Cir. 1991).

**24.** 781 A.2d at 647.

**25.** This direct examination is set forth in the Superior Court's opinion denying postconviction relief. *State v. Capano,* 2005 Del.Super. Lexis 69, *30–36 (March 9, 2005).

The lack of an objection to the cross-examination in these circumstances does not rise to deficient performance under *Strickland.* The Superior Court correctly found that Capano had "opened the door" to the cross-examination during his direct examination and that his cross examination was directed to the credibility of factual issues Capano himself had raised. Even if defense counsel had been able to successfully object to the prosecutor's cross-examination, Capano has not met his burden of showing that the questioning was so serious as to deprive him of a fair trial. Moreover, other evidence was sufficient to sustain the conviction. This claim is without merit.

## B.

### The 1991 Death Penalty Statute Is Not Unconstitutional On Its Face

We now turn to the constitutionality of the 1991 death penalty statute. *Ring v. Arizona* held that only a jury, not a judge sitting without a jury, may find as fact a statutory element necessary for the death penalty, because the Sixth Amendment requires a jury to find an aggravating circumstance necessary for the imposition of a death sentence.[26] Capano was sentenced in 1999 under the 1991 Statute, where the jury's only function was to advise the judge, who then decided whether a death sentence should be imposed. In 2002, the General Assembly revised Delaware's Death Penalty Statute because of the decision in *Ring.*[27] "The 2002 Statute transformed the jury's role, at the so-called narrowing phase, from one that was advisory under the 1991 version of Section 4209, into one that is now determinative as to the existence of any statutory aggravating circumstances."[28] This Court has upheld the constitutionality of the 2002 statute in *Brice v. State.*[29]

In *Brice,* this Court also found no structural defect in the 1991 statute.[30] Capano urges us to overrule *Brice* because the 1991 statute is unconstitutional under *Ring.* We decline Capano's invitation to revisit the well-settled law in *Brice,* where this Court held that unanimous jury findings render any *Ring* error harmless.[31] We reaffirmed *Brice* in subsequent opinions such as *Norcross*[32], *Ortiz*[33], and most recently, *Steckel.*[34] For the reasons this Court articulated in *Brice,* there is no merit to Defendant's claim that the 1991 statute was structurally deficient and therefore unconstitutional on its face.

**26.** 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). *See also Brice v. State,* 815 A.2d 314, 318 (Del.2003).

**27.** 11 Del. C. § 4209; 73 Del. Laws c. 423, S.B. 449 (2002).

**28.** *Brice,* 815 A.2d at 320.

**29.** 815 A.2d 314 (Del.2003).

**30.** *Brice,* 815 A.2d at 326.

**31.** *Id.*

**32.** *Norcross v. State,* 816 A.2d 757, 767 (Del. 2003) ("*Ring* only extends to the so-called 'narrowing' phase of the sentencing process. Thus, once a jury finds, unanimously and beyond a reasonable doubt, the existence of at least one statutory aggravating circumstance, the defendant becomes death eligible and *Ring*'s constitutional requirement of jury fact-finding is satisfied.").

**33.** *Ortiz v. State,* 869 A.2d 285, 305 (Del.2005) ("Delaware's hybrid form of sentencing, allowing the jury to find the defendant death eligible and then allowing a judge to impose the death penalty once the defendant is found to be death eligible, is not contrary to the Sixth Amendment of the United States Constitution, as construed in *Apprendi* and *Ring.*").

**34.** *Steckel v. State,* 882 A.2d 168 (Del.2005).

## C.

### The Sentencing Procedure As Applied To Capano Did Not Meet Procedural Constitutional Requirements

We next address whether, as applied to Capano, the 1991 sentencing procedure met procedural constitutional requirements under *Ring* and the Delaware Constitution. The State argues that the United States' Supreme Court decision in *Ring* applies only to the Arizona statutory scheme and is inapplicable to Delaware's death penalty statute. Instead, the State urges us to apply only *Hildwin v. Florida*,[35] a decision of the United States Supreme Court before *Ring* and *Apprendi*, holding valid a jury's recommendation that the judge impose a death sentence. In this case, we must decide how the United States Supreme Court decisions in *Ring* and *Apprendi* apply to the Delaware statutory scheme.

The United States Supreme Court has held that any new finding of fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.[36] Accordingly, a judge, sitting without a jury, may not find a statutory aggravating circumstance necessary to impose the death penalty.[37] The State argues that *Ring* does not apply in Delaware because the judge does not sit without a jury, but relies on the jury's recommendation. *Ring*'s holding is not so narrow. Rather, the United States Supreme Court concluded that "[c]apital defendants, no less than non-capital defendants... are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."[38] The Superior Court decided that this jury determination does not have to be unanimous under the Delaware Constitution.[39] We disagree.

For over 230 years, Delaware has required that twelve members of a jury unanimously find as fact every element of a crime beyond a reasonable doubt.[40] Under *Ring*, a statutory aggravating circumstance that qualifies a defendant for capital punishment is itself the "functional equivalent of an element of a greater offense."[41] The advisory jury in Capano's case did not unanimously find the element that the "murder was premeditated and the result of substantial planning."[42] Without a unanimous jury finding of the statutory aggravating circumstance, the procedure used to sentence Capano to death under the 1991 statute was unconstitutional as applied to him.

In 2005, the American Bar Association adopted *Principles for Juries and Jury Trials*. Principle 1 states that "the right to jury trial shall be preserved."[43] Principle 4 states that "jury decisions should be

**35.** 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989).

**36.** *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

**37.** *Ring*, 536 U.S. at 609, 122 S.Ct. 2428.

**38.** *Ring*, 536 U.S. at 589, 122 S.Ct. 2428.

**39.** *State v. Capano*, 2005 Del.Super. Lexis 69, *95–99 (March 9, 2005). ("Labeling a 'statutory aggravator' as an element does not require that it be treated the same as the statutory elements of an offense for the finding of guilt." *Id.* at *98.).

**40.** *Claudio v. State*, 585 A.2d 1278, 1297–98 (Del.1991). We recognize, of course, that the right to a jury determination may be waived. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 278, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Davis v. State*, 809 A.2d 565, 568 (Del.2002). In this case, Capano did not waive his right to a jury trial.

**41.** *Ring*, 536 U.S. at 609, 122 S.Ct. 2428.

**42.** 11 *Del. C.* § 4209(e).

**43.** AMERICAN BAR ASSOCIATION, PRINCIPLES FOR JURIES & JURY TRIALS 1 (August 2005).

unanimous."[44] The commentary notes that "at least as early as the fourteenth century it was agreed that jury verdicts should be unanimous."[45] The commentary further explains the rationale for a preference for unanimity:

The historical preference for unanimous juries reflects society's strong desire for accurate verdicts based on thoughtful and thorough deliberations by a panel representative of the community. Implicit in this preference is the assumption that unanimous verdicts are likely to be more accurate and reliable because they require the most wide-ranging discussions—ones that address and persuade every juror. Empirical assessment tends to support this assumption. Studies suggest that where unanimity is required, jurors evaluate evidence more thoroughly, spend more time deliberating and take more ballots. Dennis J. Devine et al., *Jury Decision Making: 45 Years of Emprical Research on Deliberating Groups*, 7 PSYCHOL. PUB. POL'Y & L. 622, 669 (2001). In contrast, where unanimity is not required juries tend to end deliberations once the minimum number of a quorum is reached. *Id.*

Unanimous verdicts also protect jury representativeness—each point of view must be considered and all jurors persuaded. Studies have shown that mi-nority jurors participate more actively when decisions must be unanimous. REID HASTIE ET AL., INSIDE THE JURY 45–48 (1983); Valerie P. Hans, *The Power of Twelve: The Impact of Jury Size and Unanimity on Civil Jury Decision Making*, 4 DEL. L. REV. 2, 23 (2001); Dennis J. Devine et al., *supra*, at 669. A non-unanimous decision rule allows juries to reach a quorum without seriously considering minority voices, thereby effectively silencing those voices and negating their participation. This fosters a public perception of unfairness and undermines acceptance of verdicts and the legitimacy of the jury system. Kim Taylor–Thompson, *Empty Votes in Jury Deliberations*, 113 HARV. L. REV. 1261, 1315 (2000).

Jury verdict unanimity has been required in Delaware for centuries.[46]

We recognize that some jurisdictions do not require jury unanimity,[47] but non-Delaware precedent does not control our interpretation of the Delaware Constitution which expressly requires that "[t]rial by jury shall be as heretofore."[48] "Unanimity of the jurors is . . . required to reach a verdict since such was the common law rule."[49] Under the common law, the expectation was that the elements of a crime would be determined by a jury.[50]

---

**44.** *Id.* at 21.

**45.** *Id.*

**46.** *Claudio*, 585 A.2d at 1297–98. It is also the federal rule in all criminal cases. FED. R. CRIM. P. 31(a). We also note that Principle 3 of the ABA standards states "juries should have 12 members." This recommended model has also been the law of Delaware for centuries. *Id.*

**47.** *Compare* David B. Rottman *et al.*, UNITED STATES DEPARTMENT OF JUSTICE, State Court Organization 1998 tbl. 42 (2000) (some states relax traditional size and verdict requirements) *available at* http://www.ojp.usdoj .gov/bjs/abstract/sco 98.htm.

**48.** Del. Const. Art. I, Section 4.

**49.** *Claudio* 585 A.2d at 1297 (quoting *Fountain v. State*, 275 A.2d 251 (1971)). *See* Randy J. Holland, *State Jury Trials and Federalism: Constitutionalizing Common Law Concepts*, 38 VAL. U.L. REV. 373 (2004).

**50.** *Ring v. Arizona*, 536 U.S. 584, 612, 122 S.Ct. 2428, 153 L.Ed.2d 556 (U.S.2002) (Scalia, J., concurring) (Aggravating factors making a defendant eligible for the death penalty "must be subject to the usual requirements of the common law, and to the requirement enshrined in our Constitution, in criminal cases: they must be found by the jury beyond a reasonable doubt.").

We hold that the Delaware Constitution requires that a jury must unanimously find a statutory aggravating circumstance that empowers a judge to impose the death penalty, just as the jury must unanimously determine every other element of the offense of capital murder. In this case, the conviction by the jury at the guilt phase of the trial did not establish a statutory aggravating circumstance. Nor did the jury unanimously find a statutory aggravating circumstance during the penalty phase. Capital defendants are "entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." [51] Because the statutory aggravating circumstance was not unanimously found by a jury in this case, the sentencing procedure as applied to Capano did not meet constitutional requirements.

### D.

### The Available Remedy Is A New Penalty Hearing Under The 2002 Death Penalty Statute

Finally, we must determine the appropriate remedy, given the procedural flaw in the imposition of Capano's death sentence. Capano claims that the Double Jeopardy clauses in the United States and Delaware constitutions bar retrial of the penalty phase. [52] We conclude that neither constitution bars a new penalty hearing because the jury's penalty recommendation under the 1991 statute did not operate as an acquittal.

Double jeopardy prevents the government from prosecuting an individual more than once for the same offense. [53] The Fifth Amendment of the U.S. Constitution mandates that no person "be subject for the same offense to be twice put in jeopardy of life or limb . . ."

> The underlying idea [of the Double Jeopardy Clause] is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [54]

Generally, double jeopardy principles do not apply to sentencing proceedings. [55] Capital sentencing proceedings provide an exception to the general rule, however, because the penalty phase of a capital trial resembles an ordinary trial proceeding; the sentencing authority chooses between two alternatives based upon standards to guide its decision, and the prosecution undertakes the burden of establishing facts beyond a reasonable doubt. [56] In other words, double jeopardy may apply to the penalty phase of a capital trial because the penalty phase proceeding is like a trial. [57]

The United States Supreme Court has held that "double jeopardy did not attach

**51.** *Ring,* 536 U.S. at 589, 122 S.Ct. 2428.

**52.** U.S. Const., Amend. V; Del. Const., Art. I § 8.

**53.** *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

**54.** *Green,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199. *See Sattazahn v. Pennsylvania,* 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003).

**55.** *United States v. DiFrancesco,* 449 U.S. 117, 132, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

**56.** *Monge v. California,* 524 U.S. 721, 730, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998); *Bullington v. Missouri,* 451 U.S. 430, 439, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).

**57.** *Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984).

[in a case where the death penalty statute in effect at the time of the crime and trial was unconstitutional] because a statute, albeit unconstitutional, permitting capital punishment for first degree murder existed at the time of the crimes." [58] The United States Supreme Court has concluded that the Double Jeopardy clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside. [59]

The Supreme Court of Arizona has reasoned that resentencing of a capital defendant does not implicate a defendant's protection against double jeopardy if the defendant has not been *acquitted* of the death sentence. [60] In deciding *Ring* on remand from the United States Supreme Court ("*Ring II*"), the highest court of Arizona set forth two reasons why double

jeopardy does not bar resentencing a defendant for a capital charge where the original sentencing process was unconstitutional. [61] First, the resentencing does not increase the sentence. Second, the resentencing does not supplement the original jury verdict. Courts of other states, including the Idaho Supreme Court [62] and a Washington appeals court [63] have followed Arizona's holding.

 We agree, consistent with the reasoning of the Arizona Supreme Court in *Ring II*, that double jeopardy does not bar a new penalty hearing in this case. First, although a defendant can be resentenced following an appellate reversal of his or her original sentence, the Double Jeopardy Clause of the U.S. Constitution prohibits imposing any sentence of which the defendant was either actually or impliedly "acquitted" in the first instance. [64] A defen-

**58.** *Dobbert v. Florida*, 432 U.S. 282, 297–98, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (cited by *State v. Ring*, 204 Ariz. 534, 65 P.3d 915, 930 (2003)) (In *Dobbert*, the Court reasoned "Whether or not the old statute would, in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder.").

**59.** *Bullington v. Missouri*, 451 U.S. 430, 438, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) (cited by *State v. Maestas*, 124 Wash.App. 352, 101 P.3d 426, 428 (2004)).

**60.** *Arizona v. Ring*, 204 Ariz. 534, 65 P.3d 915, 928–32 (April 3, 2003) (discussing "Does the Double Jeopardy Clause Prohibit Resentencing Under Arizona's Amended Capital Sentencing Procedure?"). After the U.S. Supreme Court ruled Arizona's death penalty regime unconstitutional in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Arizona Supreme Court consolidated all thirty-one death penalty cases then on direct appeal.

**61.** *Id.*

**62.** *State v. Lovelace*, 140 Idaho 73, 90 P.3d 298, 302 (2004) ("We conclude that there is no double jeopardy bar to imposition of the death penalty on Lovelace's sentencing following vacation of his original death sentence.").

**63.** *State v. Maestas*, 124 Wash.App. 352, 101 P.3d 426, 428–30 (2004) (holding double jeopardy does not apply when a defendant was not acquitted) (citing *Lovelace*, 140 Idaho 73, 90 P.3d 298; *Ring*, 204 Ariz. 534, 65 P.3d 915) *aff'd in part, remanded* 154 Wash.2d 1030, 119 P.3d 852 (Wash. August 24, 2005) (Order) (citing *State v. Hughes*, 154 Wash.2d 118, 110 P.3d 192 (Apr. 14, 2005) ("This court will not create a procedure to empanel juries on remand to find aggravating factors because the legislature did not provide such a procedure...")). *See also State v. Harris*, 123 Wash.App. 906, 99 P.3d 902, 912 (2004) *remanded* 154 Wash.2d 1032, 119 P.3d 852 (2005) (also citing *Hughes*, 154 Wash.2d 118, 110 P.3d 192).

**64.** *Rumsey*, 467 U.S. 203, 211, 104 S.Ct. at 2310, 81 L.Ed.2d 164; *Bullington*, 451 U.S. at 437, 445, 101 S.Ct. 1852.

dant cannot be sentenced to death at a subsequent sentencing proceeding if the sentencer or reviewing court has decided that the prosecution has failed to prove its case that the death penalty is appropriate.[65]

■ Under double jeopardy principles, an acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge.[66] Where the defendant had originally received a capital sentence, however, the United States Supreme Court has not applied the bar of double jeopardy. In *Poland v. Arizona*, the Court held that capital defendants sentenced to death at their original sentencing proceeding and whose sentences were vacated on appeal can be resentenced to death on remand.[67] Because Capano has already been sentenced to death, a new penalty hearing does not subject Capano to a harsher sentence.

■ Second, resentencing does not supplement the original jury verdict. Although completing a defendant's trial with the same judge or jurors is ideal, a defendant has no absolute right to such an arrangement:

> The double-jeopardy provision of the Fifth Amendment ... does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed.[68]

As we have explained, whether a new penalty hearing is barred by double jeopardy depends upon whether Capano was "acquitted" of capital murder. Here, the jury's recommendation and the judge's sentence of Capano to death cannot be characterized as an "acquittal" because at the time of sentencing (1) the intent of the General Assembly under the 1991 statute was that the jurors' vote served only as a nonbinding "recommendation", (2) the trial judge did not enter a judgment of acquittal on capital murder, and (3) the trial judge convicted Capano of capital murder after the penalty hearing. We hold the imposition of the death penalty under the process of the 1991 statute was not an "acquittal" that bars a new penalty hearing.[69]

At the time of Capano's trial, the General Assembly intended that the jury make a recommendation, and that the trial judge decide whether to impose a death sentence.[70] The statute expressly addresses the possibility of a non-unanimous recommendation. Section 4209(c)(3)b provided that "[t]he jury shall report to the Court its final vote by the number of each affirmative and negative votes on *each* question." Given this legislative intent, we find *Sattazahn v. Pennsylvania* to be controlling precedent.[71]

**65.** *Poland v. Arizona*, 476 U.S. 147, 155, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986).

**66.** *Rumsey*, 467 U.S. at 211, 104 S.Ct. 2305. The U.S. Supreme Court's *Rumsey* decision speaks to situations in which the defendant originally received a sentence other than death.

**67.** *Poland*, 476 U.S. at 151, 106 S.Ct. 1749.

**68.** *Wade v. Hunter*, 336 U.S. 684, 688–89, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

**69.** Consistent with *Dobbert v. Florida*, Capano was on notice by the 1991 statute that he faced the potential of capital punishment if he was convicted of Murder in the First Degree. *Dobbert*, 432 U.S. at 298, 97 S.Ct. 2290.

**70.** *See* 11 *Del. C.* § 4209(d) (1991).

**71.** 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003).

The United States Supreme Court held in *Sattazahn* that double jeopardy did not prevent Pennsylvania from retrying a death penalty case when the jury did not reach a unanimous verdict.[72] In *Sattazahn*, the jury completed the guilt phase of the trial but during the penalty phase could not reach a decision. Under Pennsylvania law Sattazahn moved that the jury be discharged and that the court enter a sentence of life imprisonment. The state statute required the judge to grant Sattazahn's motion. On appeal, the conviction was reversed and the case was remanded for a new trial. On retrial, Sattazahn was convicted and sentenced to death.[73] The U.S. Supreme Court rejected Sattazahn's contention that double jeopardy protected him when the jury deadlocked at his first sentencing proceedings and the court was required to impose a sentence of life imprisonment under Pennsylvania law. The Court determined that under Pennsylvania law the automatic life sentence was not an acquittal, and there was no state court ruling to the contrary.[74]

▮▮▮ Under Delaware law, in contrast, a sentence following a penalty hearing involves a balancing process to determine if the aggravating circumstances outweigh the mitigating circumstances of the case.[75] Where a sentencing judge in Delaware performs the balancing required by statute and imposes a life sentence, that constitutes an acquittal on the merits of whether the death penalty is appropriate.

Under the 1991 Statute, the Capano jury did not make the final determination for death penalty eligibility.[76] We note that a jury did do that before the 1991 Death Penalty Statute became effective[77] and a jury does that under the present statute.[78]

72. *Id.* at 110, 123 S.Ct. 732 (2003).

73. 537 U.S. at 103–105, 123 S.Ct. 732.

74. 537 U.S. at 109–10, 123 S.Ct. 732. *See id.* at 117–18, 123 S.Ct. 732 (O'Conner, J. concurring in part and concurring in judgment). The Pennsylvania Supreme Court held that Pennsylvania's non-discretionary life sentence of Sattazahn was not an acquittal of the death penalty barring the prosecutor from seeking death on retrial because a deadlocked or "hung jury did not act as an acquittal on the merits as did the proceedings at issue in *Bullington* and *Rumsey*." *Penn. v. Sattazahn*, 563 Pa. 533, 547, 763 A.2d 359 (2000).

75. 11 *Del. C.* § 4209(d).

76. The 1991 Statute read "...the jury shall retire to deliberate and *recommend* to the Court ... Whether the evidence shows beyond a reasonable doubt the existence of at least 1 aggravating circumstance..." 11 Del. C. § 4209(c)(3)(a) (emphasis added). "A sentence of death shall be imposed, after considering the *recommendation* of the jury ... if the *Court* finds ... Beyond a reasonable doubt at least 1 statutory aggravating circumstance..." 11 Del C. § 4209(d)(1) (emphasis added). "Otherwise, the Court shall impose a sentence of imprisonment for the remained of the defendant's natural life without benefit of probation or parole or any other reduction." 11 Del C. § 4209(d)(2).

77. Prior to enactment of the 1991 Death Penalty Statute, the question of whether a non-unanimous jury constituted an "acquittal" was answered by this Court's opinion in *Rush v. State*, 491 A.2d 439, 448–454 (Del.1985). This Court held that a trial judge committed reversible error when it instructed the non-unanimous jury to continue deliberations after it announced that it was deadlocked regarding a recommendation of the death sentence during the penalty phase. At the time, 11 Del. C. § 4209 mandated that any lack of jury unanimity in recommending the death sentence results in a sentence of life imprisonment without possibility of probation or parole automatically by operation of law. Thus, before 1991, a non-unanimous jury result during the penalty phase was considered an acquittal of the death penalty.

78. The 2002 presently in effect reads "In order to find the existence of a statutory aggravating circumstance ... beyond a reasonable doubt, the jury must be unanimous..." 11 Del. C. § 4209(c)(3)(b)(1). "A sentence of death shall not be imposed unless the jury, if a jury is impaneled, first finds unanimously and beyond a reasonable doubt the existence

Thus before and after the 1991 Statute, a non-unanimous vote on the existence of a statutory aggravating circumstance would constitute an "acquittal" on that circumstance for purposes of double jeopardy. However, it was not the intent of the General Assembly for a non-unanimous jury vote to constitute an acquittal under the 1991 statute.[79]

The sentencing judge in Capano's case did not view the jury's recommendation as an acquittal. Had the trial judge decided acquittal was the appropriate disposition of the alleged statutory aggravating circumstance, he would have said so and sentenced Capano to life imprisonment. Here, the trial judge found the statutory aggravating circumstance of substantial planning beyond a reasonable doubt. There has been no acquittal of that alleged statutory aggravating circumstance in this case.

The Dissent has relied upon the doctrine of collateral estoppel to support its view

that a new penalty hearing cannot proceed. Courts place "the burden on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding."[80] Even if Capano had sought protection under the collateral estoppel doctrine, we are not persuaded that collateral estoppel applies. Because the prior penalty hearing has been vacated and was not an acquittal, it cannot serve to "determine an ultimate issue in the present case" for the purposes of collateral estoppel.[81]

Our decision today vacates Capano's death sentence because the procedure under the 1991 statute, as applied to him, was constitutionally flawed. The fact of substantial planning, or the lack thereof, has not been determined by a "valid and final judgment."[82] Similarly, as explained above, there was no acquittal of capital murder under the 1991 statute. Therefore, neither common law principles of collateral estoppel nor any provision of the Delaware Code[83] prevents another penalty

of at least 1 statutory aggravating circumstance as enumerated in subsection (e) of this section..." 11 Del. C. § 4209(d)(1). "Otherwise, the Court shall impose a sentence of imprisonment for the remainder of the defendant's natural life without benefit of probation or parole or any other reduction." 11 Del. C. § 4209(d)(2).

79. The "catalyst" for the 1991 statute "was the imposition of life sentences on defendants by a New Castle County jury in a much publicized capital murder case involving the execution style murders of two armored car guards." *State v. Cohen,* 604 A.2d 846, 849 (Del.1992). In that case the jury was not unanimous on the issue of the death penalty and sentences of life imprisonment were imposed on the convictions of first degree murder as the law then required. The convictions were affirmed on appeal. *Robertson v. State,* 630 A.2d 1084 (Del.1993).

80. *Dowling v. United States,* 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

81. *Id.* at 348, 110 S.Ct. 668; *Banther v. State,* 884 A.2d 487 (Del.2005).

82. *Marine v. State,* 624 A.2d 1181, 1190 (Del. 1993) (quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)) ("According to the United States Supreme Court, the doctrine of collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future law suit.' ").

83. *See e.g.,* 11 Del. C. § 207(1). When a prosecution is for a violation of the same statutory provisions and is based upon the same facts as a former prosecution, it is barred by the former prosecution under the following circumstances: The former prosecution resulted in an acquittal which has not subsequently been set aside. There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination by the court that there was insufficient evidence to warrant a conviction. A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside.

hearing where the issue of punishment will be decided under procedures that comply with the United States and Delaware Constitutions.

## III. Conclusion

The judgment of the Superior Court denying Capano's ineffective assistance of counsel claims is **AFFIRMED**. The judgment of the Superior Court denying postconviction relief from the imposition of the death penalty under the 1991 statute is **REVERSED**. The death sentence under the 1991 statute is vacated and this matter is remanded for a new penalty hearing and resentencing under the 2002 statute enacted because of the decision in *Ring v. Arizona*.[84]

STEELE, Chief Justice with whom NOBLE, Vice Chancellor joins, dissenting in part.

We and the majority are forced to conclude that *Ring* and the Delaware Constitution's unanimity requirement together mandate that we reverse Capano's death sentence in this case. We therefore agree with the majority opinion in all but Part II.D. There the majority concludes that we can remand this case for a new penalty proceeding in the Superior Court and thus can allow the State to empanel a new jury before which the State may seek the death penalty a second time using the proce-

dures set forth in the 2002 Statute. We respectfully disagree and conclude that a life sentence must be imposed.

On appeal Capano argued that a retrial of the penalty phase is barred under the double jeopardy clause. We decline to reach this argument. Instead, we find that the related but broader doctrine of collateral estoppel applies and that the jury's 11-to-1 finding on the existence of the statutory aggravating factor of premeditation and substantial planning constitutes the law of the case such that the State is estopped from relitigating the statutory aggravating factor issue in a second penalty hearing. Unlike the majority, we do not discuss the double jeopardy issue because "[p]rinciples of double jeopardy, which are limited to the criminal context, are subsumed by the broader doctrine of collateral estoppel...."[85] Accordingly, "the doctrine of collateral estoppel may bar retrial in cases in which the Double Jeopardy Clause would not."[86] In this case, even if a retrial is permitted under the Double Jeopardy Clause, it is not permitted under the doctrine of collateral estoppel.[87]

The doctrine of collateral estoppel "prohibits a party from relitigating a factual issue that was previously adjudicated."[88] Thus, "when an issue of ultimate fact has once been determined by a valid and final

---

**84.** The express terms of the 2002 statute provide that it shall "apply to all defendants tried, re-tried, sentenced or re-sentenced after its effective date. This Act shall not apply to any defendant sentenced prior to its effective date unless a new trial or new sentencing hearing is ordered in the case." 73 Del. Laws ch. 423, § 6 (2002).

**85.** *Banther v. State,* 884 A.2d 487 (Del.2005).

**86.** *Marine v. State,* 624 A.2d 1181, 1190 (Del. 1993).

**87.** The majority notes the general rule that Courts "place the burden on the defendant to

demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." While Capano did not expressly make a collateral estoppel argument on appeal, given the finality of the death penalty and the fact that Capano raised a double jeopardy argument, which is subsumed under the collateral estoppel doctrine, it is not inappropriate to consider whether collateral estoppel applies to bar a second penalty hearing. When a life is at stake we should consider any argument arguably raised, subsumed, or implied on appeal.

**88.** *M.G. Bancorporation v. Le Beau,* 737 A.2d 513, 520 (Del.1999).

judgment, that issue cannot be litigated between the same parties in any future law suit." [89] To determine whether collateral estoppel applies in this case to bar relitigation of the question of whether the statutory aggravating factor exists we must determine whether a question of fact essential to the judgment was litigated and determined by a valid and final judgment.[90] We have also expressed the collateral estoppel requirements more precisely as:

(1) the issue previously decided is identical with the one presented in the action in question;

(2) the prior action has been finally adjudicated on the merits;

(3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and

(4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[91]

When examining a collateral estoppel issue in criminal cases, we must not apply the rule with the "hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." [92]

It is clear that the first, third, and fourth collateral estoppel requirements are satisfied in this case. The first issue of whether the statutory aggravating circumstance of premeditation and substantial planning that the jury in the first penalty hearing decided 11–1 is the identical issue that would have to be relitigated in a second penalty hearing. Moreover, this question of fact is certainly essential to the judgment. With respect to the third and fourth requirements for collateral estoppel, the State, the party against whom the doctrine is invoked, was a party in the first penalty hearing and had a full and fair opportunity to litigate the issue in the first hearing. The only question is whether the second requirement is satisfied, namely that the prior action has been fully adjudicated *on the merits* or, in other words, whether the question of fact essential to the judgment was determined by a *valid and final judgment.* Delaware's unanimity requirement makes the jury's 11–1 finding on the statutory aggravating factor a valid and final judgment for collateral estoppel purposes. Given our Constitution's unanimity requirement, and by applying the collateral estoppel doctrine with "realism and rationality," we conclude that the jury's failure to find *unanimously* that the only statutory aggravating factor presented to it existed is the "functional equivalent" of a finding that Capano did not premediate the victim's death and engage in substantial planning. We conclude that this finding would bind the State going forward and prevent a second penalty hearing.

The procedure used in the first penalty hearing, as set forth by the 1991 statute, provides some support for the majority's argument that the jury's 11–1 finding in this case was not determined by a valid and final judgment. Under the 1991 statute, a person convicted of first degree murder could be convicted of death or life imprisonment. After a defendant was convicted of first degree murder, the trial judge conducted a separate penalty hear-

**89.** *Marine v. State,* 624 A.2d at 1190 (quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)).

**90.** *Banther v. State,* 884 A.2d 487 (Del.2005) (citing *Taylor v. State,* 402 A.2d 373, 373 (Del.1979)).

**91.** *Betts v. Townsends, Inc.,* 765 A.2d 531, 535 (Del.2000) (citing *State v. Machin,* 642 A.2d 1235, 1239 (Del.Super.1993)).

**92.** *Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. 1189.

ing, usually before the jury that convicted the particular defendant. At the conclusion of the penalty hearing the jury made two recommendations on: (1) whether the State proved beyond a reasonable doubt the existence of at least one statutory aggravating factor, and (2) whether, by a preponderance of the evidence, the aggravating circumstances outweighed the mitigating circumstances. While the jury only made a recommendation on these issues, it reported particular numerical votes to the court. The jury's role was then contemplated to be merely advisory, however. Only the trial judge had the authority to find the existence of a statutory aggravating circumstance and to impose the death sentence.[93] Thus, in the case at bar, after the jury's recommendation by a vote of 11–1 on the existence of the statutory aggravating circumstance, the trial judge finally determined that the facts supported the statutory aggravating factor of premeditation and substantial planning.

The procedure required by the 1991 statute supports the majority's argument that the jury's advisory finding of fact was not "valid and final" because the trial judge ultimately made the determination that the statutory aggravating factor existed. This finding, and not the jury's 11–1 recommendation, is arguably the valid and final judgment upon which this Court should focus in applying the collateral estoppel bar. This superficially appealing argument misses the mark, however, for reasons we noted in *Brice v. State.*

In *Brice* we answered four certified questions of law relating to the impact the U.S. Supreme Court's decision in *Ring* had on Delaware's death penalty sentencing procedure. We also discussed the issue of structural error as it relates to the 1991 statute and the 2002 statute. We concluded that *Ring* did not provide a basis for a finding of a structural defect. We therefore looked to other U.S. Supreme Court precedent to resolve the issue. In so doing we examined the six instances where the U.S. Supreme Court has found structural error to exist and discussed the "analytical category" we found most closely analogous: the defective reasonable doubt instruction at issue in *Sullivan v. Louisiana.*[94] We explained *Sullivan* and related it to the harmless error analysis under the 1991 statute as follows:

In *Sullivan,* the defendant was charged with first-degree murder in the course of committing a robbery. 113 S.Ct. at 2080. Although there was circumstantial evidence connecting the defendant to the murder, defense counsel argued in closing that reasonable doubt existed as to identity and intent. *Id.* While instructing the jury, the trial judge gave what the State of Louisiana later conceded was an unconstitutional definition of reasonable doubt. *Id.* The defendant was subsequently convicted and sentenced to death. *Id.*

The United State Supreme Court began its analysis by noting that "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." *Sullivan,* 113 S.Ct. at 2081 ("It is self-evident, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated."). Accordingly, the defective reasonable doubt instruction had the effect of denying the defendant his constitutional right to a jury determination of guilty beyond a reasonable doubt. *Id.* 113 S.Ct. at 2081–2082 ("[T]o hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to

---

**93.** *Brice v. State,* 815 A.2d 314, 323–324 (Del. 2003).

**94.** 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

support that verdict might be—would violate the jury-trial guarantee.") (emphasis supplied). Because "there [was] no jury verdict within the meaning of the Sixth Amendment...[t]here [was] no object... upon which harmless-error scrutiny [could] operate." *Id.* 113 S.Ct. at 2082 (emphasis original). This amounted to structural error because it was impossible to quantify the effect of the constitutional error. *Id.* 113 S.Ct. at 2083.

Sentences rendered under the 1991 Statute do not suffer from the same constitutional defect. First, defendants sentenced under Delaware's 1991 scheme were not denied a jury verdict of guilty beyond a reasonable doubt. *Second, the advisory jury made specific numerical findings as to the existence of statutory aggravating circumstances. We need not hypothesize findings of aggravating factors that were never rendered; rather, the jury's numerical finding is the "object" upon which we may cast the lens of harmless error review. Because any error under the 1991 Statute does not fit into any of the structural error categories delineated by the United States Supreme Court, harmless error analysis is appropriate.*[95]

The emphasized language from *Brice* explains why it is possible to use a harmless error analysis to review any alleged *Ring* error under the 1991 statute in the event that the sentencing judge's finding on the existence of a statutory aggravating factor is ultimately found to be unconstitutional. Unlike *Sullivan,* where the defective reasonable doubt instruction rendered the jury verdict a nullity and thus any harmless error review would have required an appellate court to hypothesize a verdict

that was never rendered, under the 1991 statute the trial judge's finding of a statutory aggravating circumstance will usually be supported by an advisory jury finding of the existence of the same statutory aggravating circumstance. As we said in *Brice,* the jury's advisory numerical finding is the object upon which we may cast the lens of harmless error review. That is, in the hypothetical case where the jury makes a recommendation about the existence of a statutory aggravating factor, the trial judge makes the final finding that the same statutory aggravating factor exists and ultimately sentences the defendant to death. In the event that the trial judge's finding of fact is later found to be impermissibly unconstitutional under the Delaware or United States Constitutions, a reviewing court can look to the jury's recommended finding to "save" the death sentence. *Brice* stands for the proposition that any error that results from allowing the trial judge to find a statutory aggravating circumstance is harmless beyond a reasonable doubt in the case where the jury unanimously makes the same advisory finding about the existence of the statutory aggravating factor.

The mere fact that the jury's finding is advisory does not render it an impermissible object upon which to base the harmless error review. In *Brice* we also discussed a potential *Caldwell v. Mississippi*[96] problem under the 1991 statute.[97] The problem was that under the 1991 statute juries may have been improperly misled into believing that the ultimate decision on the existence of the statutory aggravating factor rested with the court. As we noted in *Brice,* "[i]f this argument were accepted, the 'object' upon which harmless error analysis would operate—the numerical

95. *Brice,* 815 A.2d at 326. (emphasis added).

96. 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)

97. *Brice,* 815 A.2d at 326, n. 13.

vote representing a finding of statutory aggravators—would arguably be tainted because the jury may have been misled into believing that its finding on the issue was ultimately meaningless." [98] We dismissed this argument noting that, "the holding in *Caldwell* . . . rested on Eighth Amendment grounds, and not upon a finding of structural error." [99]

The conclusion in *Brice* that we may cast the lens of harmless error review upon the jury's advisory finding that the statutory aggravating circumstance exists undercuts any argument that we cannot use the jury's finding of fact as the valid and final judgment upon which to premise collateral estoppel. Indeed, *Brice* seems to indicate that the issue here is very similar to a case where we reverse a trial judge's grant of a party's motion for judgment notwithstanding the verdict and direct the trial judge to reinstate the jury finding. In other words, the trial judge's finding on the existence of a statutory aggravating factor is superfluous in the case when there is an advisory jury finding on the existence or non-existence of a statutory aggravating factor because we can merely reinstate the jury's finding in the event that we must invalidate the procedure by which the trial judge found the statutory aggravating factor to exist, compelling us to invalidate the trial judge's judgment of death.

The interest in giving the State one complete opportunity to convict those who have violated its laws applies only in the guilt phase of a trial, not in the penalty phase of a capital proceeding. Once a defendant is convicted of first degree murder the State does not have the same interest in having one complete opportunity to have a defendant sentenced to death. In short, neither Society nor the State as its representative has a legitimate interest in continually retrying a defendant after a non-unanimous vote in the penalty phase on the issue of the existence of a statutory aggravating factor necessary to death qualify a defendant. Very importantly, the General Assembly recognized and provided for this policy in both the 1991 statute and the amended 2002 statute.

The 1991 Statute, under which Capano was sentenced, provided that "any person who is convicted of first-degree murder shall be punished by death *or* by imprisonment for the remainder of his or her natural life without benefit of probation or parole or any other reduction, said penalty to be determined in accordance with this section." [100] The procedure set forth in the Statute obviously contemplated the possibility of the death penalty being imposed. In the event that the judge could not find the factual and legal conclusions necessary to impose the death penalty, the statute expressly provided that the defendant was to receive life imprisonment as the only alternative penalty. [101] In short, the legislature expressly recognized that, to put it colloquially, "death is different." Under the 1991 statute and the 2002 statute, [102] there is no possibility of a second penalty hearing: the options are binary. The defendant can be sentenced to death or to life imprisonment; there is no provi-

---

98. *Id.*

99. *Id.*

100. 11 Del. C. § 4209 (1991).

101. 11 Del. C. § 4209(d)(1) and (2) ("A sentence of death shall be imposed . . . if . . . . [o]therwise, the Court shall impose a sentence of imprisonment for the remainder of the defendant's natural life without the benefit of probation or parole or any other reduction.").

102. The 2002 Statute in § 4209(d)(2) includes the same language as that in the 1991 Statute "Otherwise, the Court shall impose a sentence of imprisonment for the remainder of the defendant's natural life without the benefit of probation or parole or any other reduction."

sion for a retrial of a penalty hearing. At the guilt phase of a trial, however, the options are not binary. A defendant can be found guilty or not guilty OR, for various reasons, the defendant can be tried a second, third, or fourth time—he can essentially be retried as many times as there are legal reasons for the retrial.

Thus, although an 11–1 verdict during the guilt phase of the trial would not constitute an acquittal, and the State would be permitted to retry the defendant, our statutory framework contemplates that an 11–1 verdict on the existence of a statutory aggravating factor during the penalty phase must be treated differently. Under the binary options of the sentencing statutes, the 11–1 jury finding must be treated as an on the merits determination that the statutory aggravating factor does not exist for collateral estoppel purposes. There is no statutory authorization of a second extremely expensive, trial-like penalty hearing after a jury that has heard both the evidence presented at a lengthy guilt phase and a lengthy penalty phase fails to find unanimously that the statutory aggravating factor presented to it exists. In this case we need not hypothesize a jury determination on the question of whether the statutory aggravating factor exists beyond a reasonable doubt; we already have one. Remanding this case with instructions to hold another penalty hearing would give the State an opportunity to get a unanimous jury finding a second time after it failed to get that result the first time.[103] Given that we must apply the collateral estoppel doctrine in a criminal case not with the "hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality," the jury's 11–1 vote on the issue of whether the statutory aggravating factor existed in the case at bar must constitute the law of the case going forward. A jury has simply failed to find unanimously beyond a reasonable doubt that the statutory aggravating factor exists. Accordingly, in this case, that statutory aggravating factor does not exist. We, therefore, cannot remand the case for a second penalty hearing where there is a possibility of a jury finding or vote different than the one in the first penalty hearing. The doctrine of collateral estoppel precludes a second penalty hearing. Respectfully, we are compelled to dissent from the majority's conclusion that the State may empanel another jury for a second penalty hearing.

---

**103.** Note that under the 2002 Statute, in the event that the State failed to obtain a unanimous finding of fact on the aggravating factor at a second penalty hearing, it would not get a third bite at the apple because of the "Otherwise" language in § 4209(d)(2).