**Bruce R. BANTHER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 45, 2004.**

Supreme Court of Delaware.

Submitted: July 13, 2005.

Decided: Aug. 23, 2005.

Reargument Denied Oct. 4, 2005.

---

Edward C. Gill, Georgetown and Kevin M. Howard (argued), Young, Malmberg & Howard, Dover, for appellant.

John Williams (argued) and Robert J. O'Neill, Jr., Department of Justice, Dover, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, Justices and LAMB, Vice Chancellor,* constituting the court en banc.

STEELE, Chief Justice:

In 1998, a jury convicted Bruce R. Banther of first-degree murder and acquitted him of first-degree conspiracy. On appeal, we reversed the murder conviction, and in a retrial, a jury again convicted Banther of first-degree murder. In this appeal from that second conviction, we must decide whether the earlier acquittal on the conspiracy count had double jeopardy implications that collaterally estopped the State from arguing to the jury that Banther acted as an accomplice in committing the crime by agreeing to aid the principal in "planning" the murder. We answer yes, and hold that because both the conspiracy and accomplice-liability statutes contain an "agreement" element, the earlier conspiracy acquittal precluded the State, as a matter of law, from arguing that Banther *agreed to aid* his co-defendant and identified principal, John Schmitz, in "planning" the murder in order to establish accomplice liability. Because the trial judge allowed the State, over the defendant's objection, to so argue, and because the judge instructed the jury that they could convict Banther as an accomplice if he agreed to aid Schmitz in planning the murder, the trial judge failed to account for the collateral estoppel effect of the earlier acquittal

for conspiracy. We therefore reverse and remand for a new trial.

## I.

In 1996, Banther and Dennis Ravers, both retired airmen from Dover Air Force Base, entered into a business arrangement to sell blue-jeans overseas. Following a dispute over money between the two, Ravers confiscated some of Banther's belongings as collateral for a debt. Banther, undeterred, refused to pay the debt.

Allegedly seeking revenge, and knowing that North Carolina authorities wanted Banther on an unrelated probation violation, Ravers informed military police in February 1997 that he and Banther would soon enter Dover Air Force Base in an unregistered automobile. When Ravers and Banther entered the base, military police stopped the car and detained both men. The police detained Ravers overnight for the unregistered car, but Banther fled on foot to avoid arrest on the out-of-state parole violation.

Early in the morning several days later, Ravers called a Harrington police dispatcher, Cheryl Knotts, to inform police that he would soon meet with Banther and someone named "Charles" at a local community lodge. Knotts persuaded Ravers to meet her at the Harrington police station to discuss the anticipated meeting with Banther. Later that day, Ravers called Knotts to inform her that the parties would meet instead at the Harrington fire hall.

The next morning, a witness called Deputy State Fire Marshall William Sipple to report two suspicious fires on a nearby lot. On arriving at the scene, Sipple observed what appeared to be human blood and body tissue on the ground near the loca-

---

* Sitting by designation pursuant to Del. Const. Art. IV § 12.

tion of the fires. Delaware State Police suspected that a homicide had occurred, but they had no leads until Kent County investigators learned of Ravers's earlier phone calls to Knotts. Knotts also confirmed that a pair of eyeglasses found at the scene belonged to Ravers. In addition, investigators learned from the air base's Office of Special Investigations that military police had previously stopped Ravers and Banther.

After learning that the human remains found at the fire scene were from Ravers, investigators suspected that Banther and an acquaintance, John Schmitz, had killed Ravers. In an attempt to track Banther, they placed Schmitz under surveillance. On February 25, 1997, detectives learned that Schmitz and Banther would be meeting that night at a Dover casino.

From the casino, the Delaware police officers followed Banther and Schmitz to Maryland and contacted local authorities. After several traffic stops and a period of surveillance, the Maryland police eventually arrested the two. Maryland authorities then extradited Banther to North Carolina on the parole violation charge. After a period of incarceration in North Carolina, Delaware authorities extradited Banther, in July 1997 to face charges for the murder of Ravers.

In September and October 1998, Banther and Schmitz were tried jointly in the Superior Court.[1] Before the jury reached a verdict, Schmitz pleaded guilty to second-degree murder. Following trial, the

jury found Banther guilty of first-degree murder, possession of a deadly weapon during the commission of a felony, second-degree forgery, and felony theft. The jury acquitted Banther of conspiracy in the first degree.

Shortly thereafter, Banther moved for a new trial, claiming that newly discovered evidence of the forelady's false statements during voir dire undermined the integrity of the verdict. The trial judge denied Banther's motion.[2] On appeal, we remanded the question of juror partiality to the Superior Court,[3] which held, on remand, that Banther was not entitled to a new trial based on the newly discovered evidence.[4] Banther appealed this second denial of a new trial.

In 2003, we reversed Banther's convictions and remanded the case for a new trial.[5] Following a second trial that ended in February 2004, a jury convicted Banther of first-degree murder and possession of a deadly weapon during the commission of a felony. Banther now appeals this second conviction, raising eight claims of error.[6]

## II.

Banther contends that, because the jury acquitted him on the conspiracy charge following the first trial, the trial judge erred by denying Banther's motion *in limine* that sought to limit the State from offering evidence, and from arguing that Banther and Schmitz had agreed to plan to

1. *State v. Banther,* Del.Super., ID No. 9705000270 (Oct. 27, 1998).

2. *State v. Banther,* 2000 WL 33109770, 2000 Del.Super. Lexis 419.

3. *Banther v. State,* 783 A.2d 1287 (Del.2001).

4. *State v. Banther,* 2002 WL 234744, 2002 Del.Super. Lexis 44. *See also State v. Ban-*

*ther,* 2002 WL 32071689, 2002 Del.Super. Lexis 516 (denying new trial on other grounds).

5. *Banther v. State,* 823 A.2d 467 (Del.2003).

6. Because we reverse and remand for a new trial based solely on the accomplice-liability issue, we need not address Banther's remaining contentions.

kill Ravers. Banther also claims that, in light of the conspiracy acquittal, the trial judge erred by failing to excise the "agrees" element of the accomplice-liability statute from his instructions to the jury.[7] According to Banther, despite the State's need to offer evidence that Banther had engaged in substantial planning to support a conviction for intentional murder, the conspiracy acquittal implicated principles of double jeopardy that collaterally estopped the State from suggesting to the jury that Banther and Schmitz had worked together in planning to murder Ravers.

### A.   The Motion in Limine and Jury Instructions

Before trial, Banther moved *in limine* to preclude the State from arguing a theory of accomplice liability to the jury. Citing the differences between the conspiracy and accomplice-liability statutes, the trial judge denied Banther's motion. Because the jury had previously acquitted Banther of conspiracy, however, the trial judge prohibited the State from using the word *conspiracy* in its arguments to the jury. In so doing, the trial judge distinguished, for collateral estoppel purposes, the terms "conspiracy" and "substantial planning":

> I find no basis to collaterally estop the State from suggesting to the jury by evidence . . . that the death of Dennis Ravers was a result of substantial planning. There simply is no [earlier] unani-

mous jury verdict in the defendant's favor on those points.[8]

The trial judge allowed the State to argue not only that Banther had engaged in "substantial planning" of Ravers's death, but also that Banther and Schmitz had worked together and that Banther had agreed to aid Schmitz in "planning" Ravers's murder. During trial, the State conformed to the trial judge's ruling by refraining from using the word *conspiracy*. The State's arguments to the jury, however, repeatedly urged them to conclude that Banther and Schmitz agreed to act together and in fact planned the murder together.[9] The State, of course, faced the obvious dilemma of having to prove individual "substantial planning" by Banther after having failed to convict Banther of conspiracy in the earlier trial, and after having allowed Schmitz to plead guilty to a lesser offense. To obtain a conviction for murder in the first degree, the State had to establish that Banther engaged in "substantial" planning for Ravers's murder. Accomplice liability had to be the available route, but how to secure a murder conviction after the earlier failure to convict for conspiracy, posed a serious problem for the State.

Following trial, the trial judge instructed the jury on accomplice liability as follows:

> A person is guilty of an offense committed by another person when, intending to promote or facilitate the commission

---

7. *See* 11 *Del. C.* § 271(2)(b) ("A person is guilty of an offense committed by another person when . . . [i]ntending to promote or facilitate the commission of the offense the person . . . [a]ids, counsels, or *agrees* or attempts to aid the other person in planning or committing it . . . .") (italics added).

8. *Banther,* ID No. 9705000270 (Jan. 14, 2004), tr. trans. at 8.

9. *See id.* at 24 (reiterating substance of accomplice-liability jury instruction). *See also*

*Banther,* ID No. 9705000270 (Feb. 2, 2004), at L–45 (same); L–46 ("together with," "acting together," and "committed these crimes together"); L–68 ("This meeting had been planned earlier in the day, obviously."); L–80 ("plan this together"); L–85 ("[T]hey planned and carried out this killing together."); L–96 ("partners working together"); L–125 ("[I]t was planned and carried out with John Schmitz; and [with] John Schmitz and Bruce Banther acting together.").

of the offense, the person aids, counsels, *or agrees*, or attempts to aid the other person in planning or committing it .... [10]

The trial judge specifically instructed the jury that among the bases on which they could convict Banther as an accomplice was a finding, beyond a reasonable doubt, that he *"agree[d] ... to aid [Schmitz] in planning ... the offense."* [11]

### B.  Collateral Estoppel

■■■ Article I, Section 8 of the Delaware Constitution provides in part that "no person shall be for the same offence twice put in jeopardy of life or limb ...." [12] The constitutional protection against double jeopardy thus "prohibits the State from dividing a single criminal act into multiple counts of the same offense." [13] Principles of double jeopardy, which are limited to the criminal context, are subsumed by the broader doctrine of collateral estoppel, which "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future law suit." [14]

The General Assembly has codified the collateral estoppel doctrine in Title 11, Section 208 of the Delaware Code. That statute specifically addresses the situation where a criminal prosecution is barred by an earlier acquittal for a different offense:

Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution in a court having jurisdiction over the subject matter of the second prosecution under the following circumstances:

.    .    .    .    .

■■■ The former prosecution was terminated by an acquittal ... [that] necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense. [15]

The test for applying the collateral-estoppel doctrine requires that "a question of fact essential to the judgment be litigated and determined by a valid and final judgment." [16] When applying these principles, we examine the issues that were considered in the earlier prosecution, including the pleadings, defenses, evidence, and jury charge. [17]

■■■ Although a determination to give a particular jury instruction lies within the sound discretion of the trial judge, [18] a de-

---

**10.** *Banther,* ID No. 9705000270 (Feb. 2, 2004), trial tr. at L–18 (emphasis added).

**11.** *Id.* at L–18 to 19 (emphasis added).

**12.** DEL. CONST. art. I, § 8.

**13.** *Spencer v. State,* 868 A.2d 821, 822 (Del., 2005). *See also State v. Norris,* 73 A.2d 790, 792 (Del.Super.Ct.1950) ("The plea of double jeopardy will not bar subsequent prosecution unless the two indictments are for the same offense, or for offenses one of which is an indispensable element of the other.").

**14.** *Marine v. State,* 624 A.2d 1181, 1190 (Del. 1993), *citing Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). We decide this case upon the broader principles of collateral estoppel because the State

did not charge Banther with conspiracy or require him to defend against a charge of conspiracy, in the second trial.

**15.** 11 *Del. C.* § 208(2).

**16.** *Taylor v. State,* 402 A.2d 373, 375 (Del. 1979) (numerals and citation omitted).

**17.** *See State v. Sheeran,* 441 A.2d 235 (Del.Super.Ct.1981), *appeal dismissed,* 1985 Del. Lexis 411, *aff'd on other grounds,* 526 A.2d 886 (Del.1987).

**18.** *Carter v. State,* 873 A.2d 1086, 1088 (Del. 2005). *Cf. Sirmans v. Penn,* 588 A.2d 1103, 1104 (Del.1991) ("The standard is not one of perfection; some inaccuracies and inaptness

fendant enjoys the "unqualified right" to a correct statement of the law.[19] Thus, the focus is "not on whether any special words were used, but whether the instruction correctly stated the law and enabled the jury to perform its duty."[20] Where an inaccuracy in the instructions may lead to confusion that undermines either the jury's ability to reach a verdict or our confidence in their ability to do so fairly under the circumstances, we must reverse.[21]

## C. Banther's Claims

■ Banther's claim that the earlier conspiracy acquittal collaterally estopped the State from arguing an accomplice-liability theory based on an agreement, implicates the similar language employed by the conspiracy and accomplice-liability statutes. The conspiracy statute provides that when a person, intending to "promote or facilitate the commission of a class A felony ..., *agrees* to aid another person in planning of the felony ... and the other person commits an overt act in pursuance of the conspiracy, [that person] is guilty of conspiracy in the first degree."[22] An accomplice, on the other hand, may act unilaterally, without a preexisting agreement, by spontaneously deciding to aid, counsel, or attempting to aid another, *or* by agreeing to aid a principal in planning or committing a crime.[23]

In *State v. Travis,* the Superior Court stated that the "use of the [disjunctive] *or* instead of the conjunctive *and*" in the ac-

complice statute "implicitly recognized accomplice liability based on [a defendant's] unilateral decision to aid in the commission of an offense."[24] We agree that the use of the disjunctive *or* in the accomplice-liability statute allows the jury to find that a defendant either "aided" or "counseled" another without actually "agreeing" to do so in advance. Nonetheless, there are problems advancing that theory in this case to support the jury instructions given and the State's argument to support its theory of "substantial planning."

In an effort to convince the jury that Banther acted as an accomplice by aiding Schmitz's plan to murder Ravers, the State implied that Banther and Schmitz acted jointly when they "worked together" to murder Ravers. The State's repeated argument to the jury never addressed the kind of unilateral spontaneity discussed in *Travis.* The State's references to Banther's planning focused on concerted actions, which although not labeled as a "conspiracy," nonetheless operated as the functional equivalent of the agreement element that is fundamental to a conspiracy. The State's repeated argument that Banther and Schmitz acted together, coupled with the trial judge's instruction that Banther could be convicted as an accomplice if he "agree[d]" to plan the murder with Schmitz, focused on the central element of the conspiracy statute—an agreement. The State's arguments, the trial judge's ruling on Banther's motion *in limine,* and

in statement are to be expected in any charge.") (quotation marks omitted).

**19.** *Bordley v. State,* 832 A.2d 1250 (Del.2003).

**20.** *Cabrera v. State,* 747 A.2d 543, 545 (Del. 2000). *See also Aizupitis v. State,* 699 A.2d 1092, 1094 (Del.1997) ("[T]he instructions to a jury should focus exclusively on its task of determining the defendant's guilt or innocence.").

**21.** *See, e.g., Allen v. State,* 868 A.2d 837, 839 (2005).

**22.** *See* 11 *Del. C.* § 513.

**23.** 11 *Del. C.* § 271(2)(b); *State v. Travis,* 1992 WL 147996, at *2, 1992 Del.Super. Lexis 252, at *9, *aff'd on other grounds, Travis v. State,* 637 A.2d 829, 1993 Del. Lexis 444.

**24.** *Id.*at *3, 1992 Del.Super. Lexis 252, at *9.

the trial judge's inclusion in the accomplice charge of the element of agreeing to aid in planning the murder, diverted the jury from its appropriate focus. Those arguments and instructions should have focused the jury on whether the facts supported beyond a reasonable doubt that Banther had *independently* engaged in substantial planning of Ravers's murder and that Banther had acted *unilaterally* to carry out that plan.

Instead, as if Banther had never been acquitted of having agreed with Schmitz to aid in planning the murder, the trial judge allowed the State to focus on Banther and Schmitz having worked together on an agreed plan to murder Ravers. Simply barring the use of the technical word (in the minds of a lay jury) "conspiracy" did nothing to address the legal consequence of the jury's earlier acquittal of the charge of conspiracy to commit murder. In these circumstances, we cannot be confident beyond a reasonable doubt that the jury could fairly conclude that Banther aided Schmitz independently, and in the absence, of an advance agreement to do so.

In a multicount indictment charging a defendant with both conspiracy and an underlying felony relying on planning as the overt act advancing the conspiracy, we concede the State could argue and the trial judge could instruct the jury that an argument to aid would be a basis for accomplice liability. Rather than raise the

specter of collateral estoppel, the statutory overlap would go to the evidence necessary to prove the elements of each offense. Similarly, a single felony charge on an accomplice-liability theory would permit the State to argue scenarios falling within the broad explicit range of the accomplice statute, including an agreement to aid in the planning or committing of that single felony. Here, however, the jury's previous acquittal on the conspiracy count collaterally estopped the State from arguing to the jury facts that indicated Banther agreed to aid Schmitz in planning the murder.[25] The State's evidence of substantial planning could only be presented on the basis of Banther's individual, independent and spontaneous actions—not on the basis of a theory that he and Schmitz had "worked together" on the plan.

The earlier jury must have rejected the fact of an agreement between Banther and Schmitz, to find Banther not guilty of conspiracy to murder Ravers.[26] As a consequence, the State was collaterally estopped from advancing an accomplice-liability theory predicated on Banther agreeing to aid Schmitz in planning the murder. The earlier acquittal on the conspiracy count "necessarily required a determination inconsistent with a fact which must be established" for a conviction as an accomplice to the first-degree murder charge, i.e. that Banther *agreed* to aid Schmitz in planning the murder.[27]

**25.** *See, e.g., Marine v. State,* 624 A.2d 1181, 1190 (Del.1993) (holding that valid and final judgment in defendant's favor precluded, as a matter of law, identical prosecution).

**26.** *Compare State v. Biter,* 119 A.2d 894, 898 (Del.Super.Ct.1955) ("A common design is the essence of the charge.") *with Harris v. State,* 781 A.2d 694 (Del.2001) (TABLE), 2001 Del. Lexis 170, at *3 (holding that defendant may be sentenced for "two separate conspiracies in connection with two separate criminal offenses" when "evidence showed that the

crimes were not the object of the same agreement").

**27.** The State faced here, as it may well on retrial, a dilemma of its own making. The State chose to try these co-defendants jointly and charge them with intentional murder and conspiracy to commit intentional murder. The State then allowed the avowed principal, Schmitz, to plead to the lesser offense of Murder in the Second Degree during trial. The State then pursued the acknowledged accomplice, Banther, on *all* charges, which re-

To fully implement the collateral estoppel effects of the conspiracy acquittal and to protect Bather's Constitutional right against double jeopardy, the trial judge should have limited the State to arguing that Banther's actions alone, independent of any agreement or "working with" Schmitz, constituted "counsel[ing]" or "attempt[ing] to aid" Schmitz. In his jury instructions, furthermore, the trial judge should have accounted for the earlier acquittal by tailoring the jury charge to exclude any reference to a bilateral agreement between the parties. The earlier jury finding that Banther and Schmitz *did not agree* in advance to kill Ravers—a finding implicit in the conspiracy acquittal—removed that issue from the jury's consideration at the second trial. By instructing the jury that they could convict if they found beyond a reasonable doubt that Banther agreed to aid Schmitz in planning or committing the offense, and by allowing the State to argue that Banther and Schmitz "planned *together*" to commit the murder, the trial judge allowed the State to relitigate the fact of an "agreement" that is necessary for a conviction of conspiracy but that serves as only one basis for accomplice liability. Because the trial judge failed to enforce the collateral estoppel provisions of Section 208 and as a consequence subjected Banther to being placed in jeopardy again for the conspiracy charge on which he had previously been acquitted, he erred as a matter of law.[28]

## III.

For these reasons, the judgment of the Superior Court is **REVERSED.** We **REMAND** for a new trial consistent with this Opinion.

sulted in an acquittal on the conspiracy charge. The State on retrial then sought to convict Banther as an accomplice to Murder in the First Degree on a factual theory that he planned concertedly with Schmitz to murder Ravers. The State's tactical decisions have resulted in a legal quagmire from which the State may find it difficult to escape.

**28.** *See* 11 *Del. C.* § 208(2). Because we find that the trial judge erred by failing to correctly apply this statute, we do not reach the broader constitutional question of whether the State's arguments and the jury instructions violated the state double-jeopardy clause. *See Marine v. State,* 624 A.2d 1181, 1190 (Del.1993) ("[T]he doctrine of collateral estoppel may bar retrial in cases in which the Double Jeopardy Clause would not."); *Wheatley v. State,* 465 A.2d 1110, 1111 (Del.1983) (discussing the "cardinal rule that constitutional questions will not be decided unless essential to the disposition of the case.").