Kalvin PETERSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 222, 2013.

Supreme Court of Delaware.

Submitted: Nov. 6, 2013.
Decided: Nov. 13, 2013.

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice:

The defendant-appellant, Kalvin Peterson ("Peterson"), appeals from a Superior Court judgment, following a bench trial, convicting him of one count of Possession of a Firearm by a Person Prohibited ("PFBPP"). Peterson's sole claim of error is that collateral estoppel and double jeop-

ardy bar his conviction. Peterson argues that the bench trial conviction was precluded because at a concurrent trial, a jury acquitted him of both Possession of a Firearm During the Commission of a Felony ("PFDCF"), and the underlying felony of Assault in the First Degree.

We have concluded that Peterson's arguments are without merit. Therefore, the judgment of the Superior Court is affirmed.

### Facts

On February 21, 2012, David Brown was walking toward the intersection of Bennett and Taylor Streets in Wilmington, Delaware. According to his testimony, Brown was planning to buy crack cocaine. Brown had been using crack cocaine earlier that day, and for "maybe two days" leading up to February 21st.

While speaking to some acquaintances inside a car in the middle of Bennett Street, Brown saw a person turn the corner onto Bennett Street and walk toward him. Brown turned and began walking away because he saw that that person had a gun. A moment later, Brown saw "fire" in his peripheral vision and realized he had been shot in the back.

On February 21, 2012 at 8:05 p.m., the Wilmington Police Department received a report of a shooting on the 800 block of Bennett Street near the Taylor Street intersection. Officer Witte ("Witte") responded and found Brown lying on the curb with two gunshot wounds to his right backside. Brown initially told Witte that he did not see who shot him. Witte then told Brown that he (Witte) was there to help.[1] Brown responded that he could identify the shooter but didn't know his name. Brown also told Witte that the shooter fled the scene in "a burgundy-colored vehicle."[2]

Two weeks after the shooting, Detective Lenhardt ("Lenhardt") interviewed Brown. During that interview, Brown was unable to give Lenhardt the name of the shooter. Later that day, however, Brown sent Lenhardt a text message saying "Kal" was the shooter. On March 27, 2012, Lenhardt presented Brown with a six-photo array, from which Brown identified Peterson as the shooter.[3]

On March 29, 2012, Peterson was arrested. Police searched Peterson's residence and located a burgundy Mazda in the driveway. After his arrest, Peterson was indicted for Assault in the First Degree,[4] PFDCF,[5] and PFBPP.[6] On April 9, 2013, Peterson waived his right to a jury trial on the PFBPP charge, which was then severed for a separate bench trial.

A jury trial on the assault and PFDCF charges began on April 10, 2013, and lasted four days. Brown testified that Peterson had confronted him twice on February 21, 2012 before the shooting—once when Brown was leaving his (Brown's) residence and again when Brown was leaving his

---

1. Brown was speaking with his cousin when Witte reassured Brown of his desire to help.

2. While being treated at the Christiana Hospital Emergency Department, Brown also told Jennifer Oldham, a forensic nurse: "This guy ran from Taylor Street and shot me. I don't know his name. If I could see his face, I could tell you. I know he drives a burgundy car."

3. The shooter's identity is in dispute. Peterson argued that he was not present when and where Brown was shot.

4. Del.Code Ann. tit. 11, § 613.

5. Del.Code Ann. tit. 11, § 1447A.

6. Del.Code Ann. tit. 11, § 1448. Additional indicted charges irrelevant to this appeal are omitted.

cousin's home on Bennett Street.[7] Brown also identified Peterson as the person who shot him.

Peterson presented an alibi defense—through a supervisor's testimony—that at the time of the shooting he was scheduled to work at Capriotti's sandwich shop.[8] The State rebutted that alibi defense with testimony from a Capriotti's manager that Peterson did not clock in to work on February 21, 2012.[9] The manager's testimony was corroborated by a printout from Capriotti's time-clock machine.

On April 15, 2013, the jury acquitted Peterson of the PFDCF and assault charges.[10] On April 17, 2013, the trial judge issued a bench ruling finding Peterson guilty of PFBPP.

### The Parties' Contentions

Peterson advances a single claim of error on appeal. He argues that both collateral estoppel under 11 *Del. C.* § 208, and the prohibitions against double jeopardy in the United States and Delaware Constitutions,[11] precluded a conviction for PFBPP after a jury had acquitted him of PFDCF

and the underlying felony of first degree assault. Peterson contends that the jury must have found he was not the shooter—and possibly not even at the scene at the time of the shooting. Therefore, Peterson submits, the State was collaterally estopped from seeking to convict him for PFBPP. The State argues that the general jury verdict—which did not make any specific factual findings for the acquittal—did not preclude the PFBPP conviction.

### Standard of Review

 This Court reviews claims of constitutional violations *de novo*.[12] Questions of law are likewise reviewed *de novo*.[13] In this appeal, our analysis of Peterson's collateral estoppel claim is dispositive.

### Collateral Estoppel

 In Delaware, the collateral estoppel doctrine precludes a criminal conviction where a previous prosecution was "terminated by an acquittal … [that] necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense."[14]

---

7. Brown testified that one confrontation occurred before noon and one occurred after noon, and at both times Peterson was a passenger in a car.

8. Peterson elected not to testify.

9. The State's witness was not a manager at Capriotti's during the time period in question.

10. Also on April 15, 2013, after the State closed the jury portion of the trial, Peterson filed a Motion to Dismiss the PFBPP charge, which was denied and is not contested in this appeal. Prior to resting, the State introduced evidence to the judge that Peterson was a person prohibited under the statute.

11. The United States Constitution states that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb…." U.S. Const. amend. V. The Delaware Constitution states that "no person shall

be for the same offense twice put in jeopardy of life or limb…." Del. Const. Art. 1 § 8.

12. *Tucker v. State*, 2012 WL 4512900, at *1 (Del. Sept. 19, 2012) (TABLE); *Wescott v. State*, 2009 WL 3282707, at *2 (Del. Oct. 13, 2009) (citing *Norman v. State*, 976 A.2d 843, 857 (Del.2009)).

13. *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008) (citing *Donald v. State*, 903 A.2d 315, 318 (Del.2006)).

14. Del.Code Ann. tit. 11, § 208. *See also Ashe v. Swenson*, 397 U.S. 436, 442, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) ("[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."); *Wescott v. State*, 2009 WL 3282707, at *4 (citing *Banther v. State*, 884 A.2d 487, 492 (Del.2005)).

When reviewing a collateral estoppel claim, the court's inquiry is whether, based on the pleadings, defense, evidence, and jury charge, "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."[15] Accordingly, the issue before this Court is whether Peterson has shown that the jury's acquittal on the first degree assault and PFDCF charges necessarily rested on a finding that Peterson did not possess a weapon on February 21, 2012.[16]

■ Peterson claims that because the identity of the shooter was the "sole issue" before the jury, the not-guilty verdict must necessarily have affirmatively established Peterson was not the shooter and could not have possessed a gun at that time.[17] This claim is unavailing. Peterson disregards the general nature of the jury verdict. Moreover, Peterson has not shown how the jury's general verdict was focused solely on identity.

Identity was not the only factual issue before that jury. The verdict's general nature does not reveal what the jury decided about the shooter's identity. Here, as in *Godwin v. State*,[18] the jury could have rationally based its verdict on one or more of several alternative grounds, namely: that Peterson unintentionally injured Brown, that Peterson did not cause injury to Brown, that Peterson did not possess the firearm, or that Peterson was not present at the shooting.[19]

This Court has consistently held that a jury acquittal of PFDCF and of the underlying felony does not operate as collateral estoppel to preclude a bench trial conviction for PFBPP.[20] Those prior holdings

15. *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (quoting *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. 1189 (internal quotation marks omitted)); *see also Wescott v. State*, 2009 WL 3282707, at *4 (citing *Banther v. State*, 884 A.2d at 492 (Del.2005)). The party asserting collateral estoppel has the burden to show that "the issue whose relitgation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. at 350, 110 S.Ct. 668 (citing *United States v. Citron*, 853 F.2d 1055, 1058 (1988)).

16. Peterson does not dispute that he was a "person prohibited."

17. Peterson relies primarily on *State v. Sanchez*, 2012 WL 5381405 (Del.Super.Ct. Aug. 31, 2012), a non-binding Superior Court case. In *Sanchez*, the judge found the defendant not guilty of the severed PFBPP charge where he was acquitted by a jury on reckless endangering and related charges. *Id.* at * 1. *Sanchez* can be distinguished because Brown's testimony places a gun in Peterson's possession, whereas in *Sanchez* an unidentified person fired a handgun into an apartment and the State relied on means and motive to prove the identity of the shooter. *Id.*

18. *Godwin v. State*, 2006 WL 1805876, at *3–4 (Del. Jun. 29, 2006) *abrogated by Lecates v. State*, 975 A.2d 799 (Del.2009) and *abrogated by Lecates v. State* 987 A.2d 413 (Del.2009).

19. *See id.* ("The jury could have rationally based its verdict on the ground that Godwin did not possess the [weapon], or that he did not commit the felony, or that he did not possess the [weapon] during the commission of the felony. Thus, whether the jury specifically decided the possession issue in Godwin's favor is unknown.") (citation omitted). *See also Wescott v. State*, 2009 WL 3282707, at *2, *5 (finding that conflicting testimony could have given rise to reasonable doubt regarding Westcott's intent and this would not foreclose a jury from reasonably inferring that Westcott possessed a gun).

20. *See Tucker v. State*, 2012 WL 4512900, at *1 (affirming a separate bench trial conviction of PFBPP where a jury acquitted the defendant of PFDCF); *Wescott v. State*, 2009 WL 3282707, at *3–5; *Godwin v. State*, 2006 WL 1805876, at *3–4 (Del. June 29, 2006) *abrogated by Lecates v. State*, 975 A.2d 799 (Del.2009) and *abrogated by Lecates v. State*, 987 A.2d 413 (Del.2009). *See also, Register v. State*, 2013 WL 497991, at *1 (Del. Feb. 9,

are directly applicable here. The jury's general verdicts of acquittal did not establish that the jury affirmatively concluded that Peterson did not possess a weapon.[21]

### Conclusion

The Superior Court's judgment, convicting Peterson of PFBPP, is affirmed.

2013) (TABLE) ("It is settled law in Delaware that an acquittal on related weapons charges does not preclude a conviction for PFBPP. A jury acquittal of PFDCF ... does not preclude a trial judge from finding [the defendant] guilty of PFBPP.").

21. Assault requires the State prove the defendant (1) intentionally caused (2) serious physical injury (3) with a deadly weapon. Del. Code Ann. tit. 11, § 613. PFDCF requires the State prove the defendant (1) committed an underlying felony (2) while possessing a firearm, and (3) acted knowingly. Del.Code Ann. tit. 11, § 1447A. PFBPP requires the State prove the defendant (1) was a person prohibited and (2) that he possessed a firearm. Del. Code Ann. tit. 11, § 1448. *See also Lecates v. State,* 987 A.2d 413, 422 (Del.2009) (explaining that a conviction under Del.Code Ann. tit. 11, § 1447A requires the State prove possession during the felony whereas section 1448 is broader because it prohibits possession at any time.).