# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
|       Plaintiff, | ) | |
| | ) | |
|     v. | ) | Crim I.D. No. 2308000243 |
| | ) | |
| KADAESHA JOHNSON, | ) | |
|       Defendant. | ) | |

Submitted:  February 25, 2025
Decided: May 23, 2025

## **MEMORANDUM OPINION**

### *On Defendant's Motion for Judgment of Acquittal* – **DENIED**

Jillian Bender, Esquire, Zoe Schloss, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware, *attorneys for the State of Delaware*

Michael Heyden, Esquire, Wilmington, Delaware, *attorney for Defendant*

**BRENNAN, J.**

Following her convictions for Assault First Degree and Possession of a Deadly Weapon During the Commission of a Felony (hereinafter "PDWDCF"), Defendant Kadaesha Johnson moves for judgment of acquittal.[1]  Arguing a theory of inconsistent verdicts, Johnson urges the Court to find the evidence insufficient to convict.  The State opposes.  In its opposition, the State argues the theory of accomplice liability supports Defendant's convictions.   The State is correct; sufficient evidence exists under the accomplice liability theory, which can allow for a conviction even where the jury acquits on a conspiracy charge.  Therefore, the verdicts in the case were supported by the evidence, were not inconsistent and for the reasons stated below, Defendant's motion is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On the evening of July 25, 2023, Defendant, her then-neighbors, Raney Wooding (hereinafter "Wooding") and Guillermo Rodriguez (hereinafter "Rodriguez"), engaged in a verbal altercation that ultimately turned physical.[2]  At first, all were outside in the backyards of 518 and 516 Monroe Street.[3]  The verbal argument escalated when Defendant spat on Wooding, and swung a bottle at her.

---

[1] State v. Kadaesha Johnson, Crim ID No. 2308000243, Superior Court Criminal Docket Item (hereinafter "D.I.") 46.

[2] The facts were taken from the filed motion and responses, as well as the testimony as presented at trial.  D.I. 40, 46-48, 50-51.

[3] D.I. 40.

2

After ultimately retreating into her home, the evidence presented that Defendant called her mother to the scene. Shortly after the initial confrontation, Defendant and her mother, Celestine Johnson, emerged from the back door adjacent to where Wooding and Rodriguez had remained. At this time, Celestine Johnson threw hot oil at Wooding, as Defendant threw boiling hot water. Wooding was hit with the oil and injured. Celestine Johnson retreated back into Defendant's home and allegedly emerged with two knives: one with a red handle and one with a black handle. With the help of Defendant, who held Wooding down and prevented anyone from stopping Celestine, Celestine went after Wooding and Rodriguez. Celestine Johnson ultimately cut Wooding with a knife. When Wooding was free, she and Rodriguez ran into their house, at which time it was alleged that Celestine Johnson attempted to enter their residence. During these events, a crowd had gathered to watch, and a bystander captured the events on cell phone video.[4]

On January 2, 2024, a New Castle County grand jury indicted co-defendants Celestine and Kadaesha Johnson on charges of Assault First Degree, six counts of Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"), Attempted Assault First Degree, Attempted Home Invasion Burglary First Degree, and Conspiracy Second Degree.[5] Celestine Johnson resolved her charges pre-trial

---

[4] D.I. 44, State's Exhibit 21.
[5] D.I.12. Count X, Conspiracy Second Degree, alleged that "Celestine Johnson…and Kadaesha Johnson, on or about the 25th day of July, 2023,…when intending to

and was awaiting sentencing at the time of Defendant's jury trial.[6] Defendant's trial began on October 28, 2024.[7] On October 31, 2024, the jury returned a guilty verdict on Count I, Assault Second Degree, a lesser-included offense of Assault First Degree, and Count II, PDWDCF. Johnson was acquitted of the remaining charges in the Indictment.[8]

Post-trial, and prior to sentencing, on November 7, 2024, Defendant filed the instant Motion pursuant to Superior Court Criminal Rule 29.[9] On November 12, 2024, the State responded in opposition.[10] Defendant's Reply was filed two days later.[11] However, because Defendant's Reply included an argument not set forth in its original motion, the Court afforded the State an opportunity to address those cases, and likewise an opportunity for Defendant to respond.[12] The State did so on

---

promote or facilitate the commission of the felony of Assault 1st Degree, Attempted Assault 1st Degree, or Attempted Home Invasion Burglary 1st Degree as set forth in Count(s) I, IV and VII of this Indictment … did agree with each other that one, the other or each of them would commit said Assault 1st Degree, Attempted Assault 1st Degree, or Attempted Home Invasion First Degree and one, the other or each of them did commit an over act in pursuance of said conspiracy by engaging in conduct constituting those felonies or an attempt to commit those felonies or by committing some other overt act in pursuance of the conspiracy."

[6] *State v. Celestine Johnson*, 2307015108, D.I. 21.

[7] D.I. 40.

[8] *See* Verdict Form, D.I. 45.

[9] *See* Defendant's Motion, D.I. 46.

[10] D.I. 47.

[11] D.I. 48.

[12] D.I. 49.

February 10, 2025.[13]  Defendant responded on February 25, 2025.[14]  Defendant's motion is now ripe for decision.

## II.  STANDARD OF REVIEW

Under Superior Court Criminal Rule 29 (c), "[i]f the jury returns a verdict of guilty . . . a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period."  In considering a motion for judgment of acquittal, the Court must determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt."[15]  "Evidence of a defendant's guilt may be proven exclusively through circumstantial evidence since this Court does not distinguish between direct and circumstantial evidence in a conviction context."[16]

## III.  ANALYSIS

Defendant's initial motion argues that there was insufficient evidence to convict her of the two charges, given that the evidence was "clear and convincing" that she did not possess a knife during the confrontation and assault of Wooding.[17]

---

[13] D.I. 50.
[14] D.I. 51.
[15] *Davis v. State*, 706 A.2d 523 (Del. 1998).
[16] *Id.*
[17] Def. Mtn. for Judgm't of Acquittal, p. 3, D.I. 46.

5

Citing *Harley v. State*,[18] Defendant argues that there must be evidence she possessed the instrument used in the assault, as it is an essential element of the crime.[19] Defendant further argues her acquittal on the remaining charges, including the Attempted Assault 1st and accompanying PDWDCF counts evidence the inconsistency in the verdict.[20] The State argues the verdict is consistent, as it brought its case under an accomplice theory of liability. It continues that so long it was proved, beyond a reasonable doubt, that Defendant, when intending to promote or facilitate the assault, "[s]olicit[ed], request[ed], command[ed], importune[d] or otherwise attempt[ed] to cause the other person to commit [assault], or aide[d], counsel[ed] or agree[d] or attempt[ed] to aid the other person in planning or [having] commit[ed] [assault]," Defendant's convictions must stand.[21]

In her Reply,[22] Defendant argued that her conviction must be vacated for the reasoning set forth in both *Manlove v. State*[23] and *Banther v. State*.[24] In each case, on re-trial, it was found to be error for the State to have presented an accomplice theory where the respective defendant was acquitted on a conspiracy charge in a previous trial. The State distinguishes these cases by their procedural posture and

---

[18] 534 A.2d 255 (Del. 1987).
[19] D.I. 46.
[20] *Id.*
[21] D.I. 47, pp.3-4.
[22] D.I. 48.
[23] 910 A.2d 1284 (Del. 2006).
[24] 884 A.2d 487 (Del. 2005).

argues that neither *Manlove* nor *Banther* definitively precluded proceeding on an accomplice liability theory where there was an ultimate acquittal on a conspiracy charge.[25] Defendant responds that here, the evidence lacked sufficient facts to support her convictions, and maintaining her inconsistent verdict arguments.[26]

At trial, the State called six live witnesses, including three investigating officers, two eyewitnesses, and a forensic nurse examiner to speak to Wooding's injuries.[27] Through those witnesses the State admitted body worn camera footage from the night of the attack, photographs of the crime scene, and two knives recovered from the scene.[28] The State introduced and played the cell phone video footage taken during the incident from a bystander.[29]

A. CONSPIRACY AND ACCOMPLICE LIABILITY ARE SEPARATE AND DISTINCT FORMS OF CRIMINAL CONDUCT

Accomplice liability holds one person liable for the acts of another "if an appropriate degree of complicity in the offense can be proved."[30] Specifically, Title 11 Section 271 of the Delaware Code, in pertinent part, provides:

> [a] person is guilty of an offense committed by another when: ***
> (2) Intending to promote or facilitate the commission of the offense
> the person: a. [s]olicits, requests, commands, importunes or
> otherwise attempts to cause the other person to commit it; or [b.]

---

[25] D.I. 50.
[26] D.I. 51.
[27] D.I. 44.
[28] *See Id.*
[29] D.I. 47.
[30] *Allen v. State*, 970 A.2d 203, 210 (Del. 2009).

7

[a]ids, counsels or agrees or attempts to aid the other person in planning or committing it.[31]

The finding of guilt for PDWDCF required the jury to have unanimously concluded that Defendant knowingly and unlawfully possessed a deadly weapon during the commission of the predicate felony of Assault Second Degree.[32] In returning a guilty verdict of Assault in the Second Degree, the jury unanimously found the requisite felony associated with Count II, PDWDCF, was committed.[33] As alleged in the Indictment, the deadly weapon charged in Count II is a knife with a red handle.[34]

The evidence at trial did not show Defendant had physical possession of a knife.[35] Defendant argues acquittal is therefore appropriate because physical possession of the knife is essential in proving PDWDCF.[36] However, because the State's case relied entirely upon the theory of accomplice liability, demonstrating Defendant actually possessed the knife was unnecessary.[37] Given that Defendant's charges are the product of the principal, Celestine Johnson's actions, the State's evidence necessarily must have showed that Defendant was an accomplice to the

---

[31] 11 *Del. C.* § 271
[32] 11 *Del. C.* § 1447; D.I. 42.
[33] D.I. 45.
[34] D.I. 12.
[35] D.I. 46 and 47.
[36] D.I. 46.
[37] D.I. 47.

principal, and that Defendant acted with intent to further the principal's criminal objective.[38]

When pursuing a theory of accomplice liability, a specific agreement is not necessarily required as evidence of a relationship between a principal and accomplice.[39]  Instead, "an accomplice…may act unilaterally, without a preexisting agreement, by spontaneously deciding to aid, counsel, or attempting to aid another, *or* by agreeing to aid a principal in planning or committing a crime."[40]  "If the State can establish an appropriate degree of complicity among the offenses, the exact manner of a particular defendant's participation is immaterial."[41]

After finding an accomplice-principal relationship, a jury must be satisfied that the State has proved, beyond a reasonable doubt, that Defendant's conduct exhibited the requisite intent to act while also intending the principal's criminal objective.[42]  In determining intent, the jury is permitted to weigh Defendant's conduct and:

> must be permitted, among other evidentiary alternatives, to infer that the defendant intended the natural and probable consequences of [their] act.  If, on a given set of facts, such an inference is a

---

[38] *Dalton v. State*, 252 A.2d 104, 105 (Del. 1969) ("[t]o be liable as an accomplice, it must affirmatively appear that the defendant in some way actively encouraged the principal to commit the crime").
[39] *Banther v. State*, 977 A.2d at 882.
[40] *Id.*
[41] *Bryant v. State*, 1990 WL 17775, at *2 (Del. 1990).
[42] D.I. 42.

9

conclusion that could be reached by a reasonable jury beyond a reasonable doubt, the evidence is sufficient.[43]

The jury was presented with the testimony of both Wooding and Rodriguez, who observed Defendant's conduct on July 25, 2023. Both witnesses testified to the initial verbal conflict between Defendant and Wooding, which concluded when Defendant retreated inside her home. Their testimony revealed that after roughly twenty minutes, Celestine Johnson emerged and threw hot oil on Wooding, while Defendant threw boiling hot water toward the two of them. The State submitted photographs of two purported water and oil markings visible outside the home upon police arrival.[44]

Their respective testimony continued that Celestine Johnson then returned to the 518 residence to once again emerge, but this time with knives. In conjunction with the eyewitness testimony, the State played the cell phone video which depicted Celestine Johnson with two knives – one of which had a red handle – who restrained Wooding. As she does so, Rodriguez attempted to wrangle the knives from Celestine's hands.[45] At that point, Defendant is captured on video having exited her

---

[43] *Plass v. State*, 457 A.2d 362, 365 (Del. 1983); *see also* 11 *Del. C.* §306(c)(1).
[44] *See* D.I. 44.
[45] *Id.*

10

home and assisted Celestine Johnson.[46] While her mother attacked Wooding with a knife, Defendant is seen having kicked, punched, and pulled Wooding's hair.[47]

At the conclusion of the evidence, the jury was instructed on the legal concept of accomplice liability, which first required the jury to determine whether an accomplice principal relationship existed between defendant and anyone else. If so,

> then [the jury] must decide if the crimes charged were intended offenses or unintended offenses. If you unanimously find beyond a reasonable doubt that the crimes charged in the indictment were intended offenses between the principal and the accomplice, then all the participants are guilty of the crimes charged. On the other hand, if you find that the crimes charged in the indictment were unintended offenses, then you may find an accomplice guilty only if you find that it was reasonably foreseeable that the offenses actually committed would be committed, and that the offenses actually committed were done in furtherance of the original agreed upon unlawful acts.[48]

Accomplice liability permits a finding of guilt for the principal's underlying crimes, when one acts in compliance with the principal, even if the accomplice did not fully execute the underlying criminal conduct.[49] It follows that Defendant could be found guilty of PDWDCF through Celestine's possession of the red handled knife during the attack, despite never holding it herself. To convict Defendant, the jury needed to conclude Defendant acted with dual intent to execute her own actions,

---

[46] *Id.*

[47] *Id.*

[48] D.I. 42.

[49] *Bryant*, 1990 WL 17775, at *2 ("If the State can establish an appropriate degree of complicity among the offenses, the exact manner of a particular defendant's participation is immaterial").

while intending for her mother's continued participation in the underlying criminal activity, the assault of Wooding with the red-handle knife. It appears the jury so decided; and sufficient evidence supports its verdict.

Defendant challenges the jury's outcome because "[t]he not guilty verdict on the conspiracy charge shows that the jury did not find that a principle-accomplice relationship existed."[50] Further, Defendant contends *Manlove v. State*[51] and *Banther v. State,*[52] support her position because in both cases the defendant, who was acquitted of conspiracy, could not be tried under a theory of accomplice liability evidenced by a plan or agreement.

In *Manlove*, the Supreme Court of Delaware delineated between conspiracy and accomplice liability. "Co-conspirator and accomplice liability are different forms of criminal conduct. A conspiracy requires an agreement between co-conspirators, but the object of the conspiracy need not be accomplished. For accomplice liability, generally no prior agreement is required, but the underlying criminal conduct must have occurred."[53] The legal distinction between conspiracy and accomplice liability allowed the Court to conclude "Manlove's acquittal of Conspiracy in the Second Degree at his first trial did not collaterally estop the State

---

[50] D.I. 48.
[51] 901 A.2d 1284 (Del. 2006).
[52] 884 A.2d 487 (Del. 2005).
[53] *Manlove*, 901 A.2d at 1288.

from seeking a conviction for Robbery in the First Degree on the basis of accomplice liability at Manlove's retrial."[54]

In *Manlove*, the Court found the State was limited when trying him a second time under an accomplice liability theory. The Court held that "any conviction based on accomplice liability at his second trial could [have] only [been] based on Manlove's unilateral actions and could not [have been] based on a plan or agreement," because the jury's acquittal already considered whether a plan or agreement existed, and found that it did not.[55] *Banther* similarly held "that the earlier conspiracy acquittal collaterally estopped the State from arguing an accomplice-liability theory *based on an agreement*."[56] This is not the case here.

Neither *Manlove* nor *Banther* dictate that the Defendant acquittal of Conspiracy Second Degree conflicts with her convictions for Assault Second Degree and PDWDCF. The State's theory of accomplice liability did not rely on a plan or agreement. Rather, the State alleged Defendant is criminally responsible for having solicited, requested, committed, or otherwise having attempted to aid Celestine Johnson executing a crime, even without a specific agreement to do so.[57] Contemplating the existence of an agreement, while not essential to convict

---

[54] *Id.* at 88-89.
[55] *Id.* at 89.
[56] *Banther*, 884 A.2d at 494 (emphasis added).
[57] D.I. 42.

Defendant, was an appropriate inquiry for the jury because Defendant, unlike the *Manlove* and *Banther* defendants, Defendant had never been previously acquitted of conspiracy.

Further, an acquittal on the conspiracy charge does not equate to an inconsistent verdict; conspiracy and accomplice liability are separate and distinct forms of criminal conduct. While an agreement is the hallmark of conspiracy, it is not required in accomplice liability.[58] Instead, and as the jury was instructed, an accomplice:

> is someone who has the same state of mind as the person who personally commits the acts, and intending to promote or facilitate the commission of the crime, solicits, requests, commits, or otherwise attempts to aid the other person in planning or committing the crime, or aids, counsels, *or* agrees to attempt or aid the other person in planning or committing a crime.[59]

The disjunctive is important here. "[T]he use of the disjunctive 'or' in the accomplice-liability statute allows the jury to find that a defendant either 'aided' or 'counseled' another without actually 'agreeing' to do so in advance."[60] The jury's verdict is consistent with a finding of guilty pursuant to accomplice liability.

---

[58] 11 *Del. C.* §§ 271, 512; *see also Manlove*, 901 A.2d at 1288.
[59] D.I. 42 (emphasis added).
[60] *Banther*, 884 A.2d at 493; citing *State v. Travis*, 1992 WL 147996 (Del. Super. June 9, 1992).

14

**B.** **THE VERDICT IS OTHERWISE CONSISTENT AND SUFFICIENTLY SUPPORTED BY EVIDENCE PRESENTED AT DEFENDANT'S TRIAL**

Defendant also challenges the verdict by arguing the evidence presented at trial varies from Count II of the indictment, which alleged Defendant "did knowingly and unlawfully possess a knife with a red handle … during the commission of Assault [Second] Degree."[61]  In support, Defendant cites to *Harley v. State,*[62] in which a defendant was convicted of PDWDCF with the indicted deadly weapon being a "tire iron," but at trial witnesses testified the defendant used a "automobile tire jack stand."[63]  A post-trial motion to amend the indictment was granted, which replaced "tire iron" with "jack stand."[64]  On appeal, the Supreme Court agreed the untimely amendment was prejudicial, because:

> the nature and description of the instrument used during an assault is an essential element of the crime of possession of a deadly weapon during the commission of a felony.  There are important differences between a 'tire iron' and the part of a jack which was described as having been used in this case…The variance between the instrument described in the indictment and the instrument actually used created ambiguity such that the issue presented to the jury was unclear and caused a guilty verdict to depend on a factual determination not justified by the evidence.[65]

---

[61] D.I. 12.

[62] 534 A.2d 255 (Del. 1987).

[63] *Id.* at 256.

[64] *Id.*

[65] *Id.* at 256-57 (holding that while the variance prejudiced defendant's substantial rights related to his PDWDCF conviction, his assault conviction was upheld because "the exact nature and description of the instrument used during the altercation is not an essential element of the crime").

15

Defendant is misapplying the *Harley* ruling to the facts at bar. According to Defendant, because the indictment alleged a knife, and there was no evidence presented at trial to show Defendant herself possessed a knife, Defendant's rights were similarly prejudiced.[66] In *Harley*, trial testimony described the use of an entirely different, larger, and heavier deadly weapon than the tire iron alleged in the indictment. Defendant's indictment alleged a red handle knife. Evidence was presented in the form of eyewitness testimony, a video and photographs, that depicts a red handle knife. Further, Wooding's injuries were consistent with having been cut by a knife. Finally, two knives were admitted into evidence – one of which had a red handle.[67] No alternative weapon or instrument was revealed at trial. As already discussed, Defendant's actual possession of the knife was immaterial to her convictions based on the theory of accomplice liability. Thus, no inconsistencies between the indictment and evidence created ambiguity for the jury as to what deadly weapon was involved.

Last, Defendant challenges her PDWDCF verdict of guilt as inconsistent with the acquittal on Counts III through X, which included two charges of PDWDCF. Counts III, V & VI charged Defendant with PDWDCF. Count III charged possession of the black handled knife, and related to Count I, Defendant's Assault

---

[66] D.I. 46.
[67] D.I. 44, State's Ex. 19, 20.

[Second] Degree conviction in which Wooding was the victim. Counts V& VI incorporated the Attempted Assault First Degree charge in Count IX, in which Rodriguez was the named victim, and charged Defendant with PDWDCF for the red handled knife (Count V) and the black handled knife (Count VI).

The fact that the jury only convicted Defendant of the lesser-included offense of Assault Second Degree and the corresponding PDWDCF charge for Wooding does not support a finding of insufficient evidence or inconsistent verdicts. Evidently the jury was not convinced beyond a reasonable doubt that Defendant was an accomplice to Celestine's use of the black handle knife in her attack of Wooding, or that there was an Attempted Assault First Degree that occurred against Rodriguez. The fact that Defendant was convicted of one PDWDCF and acquitted of others, with a different weapon and for a different victim is of no consequence here.

The evidence supports the fact that the jury found Defendant liable as an accomplice for the crime of Assault in the Second Degree, which is supported by the testimony and the cell phone video. The jury's inability to find Defendant guilty, beyond a reasonable doubt, the other alleged predicate felonies, does not mandate a finding of inconsistent verdicts. These charges were for separate and distinct crimes, some of which corresponded to a different victim. Thus, the jury's verdict is consistent.

## IV. CONCLUSION

In viewing evidence in the light most favorable to the State, sufficient evidence was presented at trial to allow a rational trier of fact to convict Defendant of Counts I, Assault Second Degree, as well as Count II, PDWDCF. Such a finding is not inconsistent with the remaining verdicts, including the Conspiracy Second Degree acquittal. Therefore, the Defendant's post-trial Motion for Judgment of Acquittal is **DENIED**. Defendant is to now be scheduled for sentencing.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge